CASE 9.—ACTION BY GEORGE W. HINESLEY AGAINST LAWRENCE JONES, THE JEFFERSON REALTY COMPANY, MRS. PAMELA BEATTIE, JOHN HOERTZ AND OTHERS.

## Probst, &c. v. Hinesley
## Hinesley v. Beattie, &c.

Appeals from Jefferson Circuit Court, Common Pleas Branch (Second Division).

THOS. R. GORDON, Judge.

From a judgment against certain defendants, including Herman Probst, they appeal, and plaintiff prosecutes a cross appeal from the judgment in favor of Mrs. Pamela Beattie and John Hoertz—Affirmed on both appeals.

1. Adjoining Landowners—Action for Damages by Blasting—Issues, Proof, and Variance.—A petition for damages caused by an excavation for a building, which charged not only that it was a nuisance, but that it was negligently and carelessly done, warrants the reception of testimony as to blasting below a depth to which the petition charged that the excavation was made and submission of the question to the jury.

2. Pleadings—Surprise in Evidence Introduced Thereunder.—Parties cannot claim to be surprised by evidence as to an issue where, prior to the trial, a deposition was taken in which the matter was fully gone into and discussed.

3. Adjoining Landowners—Danger from Blasting—Question for Jury.—Evidence held to present a question for the jury whether damage was done to adjoining property by blasting in excavating for a building.

4. Judgment—Joinder of Defendants—Judgment Against Part.—
In an action for negligence, it was not error to permit all
defendants to be joined in one suit and judgment go against
part of them.

5. Torts—Persons Liable.—While several may be guilty of sev-
eral and distinct negligent acts, yet, if their concurrent effect
is to produce an injury, they are all liable, jointly and
severally, and the comparative degree in culpability will not
affect the liability of either.

6 Adjoining Landowners—Action for Damages from Blasting—
Questions for Jury.—In an action for damages by blasting in
excavating for a building, no error as to the defendant prin-
cipal contractor can be predicated on a failure to hold as a
matter of law that the defendant who did the blasting for
it, was an independent contractor, or in not submitting this
question to the jury, where the question as to the latter's
ordinary care was submitted and the jury told to find for
him, unless they believed that the blasting alone, or, in
connection with negligence of others, caused, or helped to
bring about, the defective condition of plaintiff's wall, and
that the evidence showed he was competent, and they should
find for the principal contractor unless they believed that
the blasting was naturally and reasonably dangerous to plain-
tiff's building, and that the natural and probable result was
to injure his property, and where, besides, the evidence
showed that the architect told him to use blasting to remove
the concrete foundations, and that the superintendent of the
building, selected by the principal contractor, was frequently
present and knew that the blasting was going on, and that
its effect was frequently brought to the attention of those in
charge of the work.

7. Adjoining Landowners—Excavation for Building—When Liabil-
ity for Blasting Accrues.—In an action for damages to ad-
joining property by blasting in excavating for a building
the court properly left to the jury the question whether, under
the circumstances, the natural and probable result was to
injure plaintiff's property.

8. Appeal and Error—Harmless Error—Failure to Submit Ques-
tions to Jury.—In an action for damages to adjoining prop-
erty, caused by a subcontractor in blasting in excavating for
a building, there was no prejudicial error in failing to submit
to the jury the question of whether the principal contractor
had notice of the nuisance and took prompt means to suppress
it, where it was conclusively shown that notice of the blasting
was brought home to its architect and its superintendent, and
there was no evidence that it undertook, after such notice,
to suppress the nuisance.

9. Landlord and Tenant—Measure of Damages by Third Person
for Injury to Leasehold.|—In an action for damages to a
leasehold, caused by blasting an excavation for an adjoining
building, the court properly fixed the measure of damages
as the diminution in the value of its use for plaintiff's unex-
pired term.

Vol. 133—5

10. Landlord and Tenant—Injury to Leasehold—Admissibility of Evidence.—In an action for damages to a leasehold, caused by blasting in excavating for an adjoining building, evidence of the amount of plaintiff's restaurant business and the profits was admissible to determine the value of the use of the property.

11. Landlord and Tenant—Action for Injury to Leasehold—Nonpayment of Rent as Defense.—In an action against a third person for damages to a leasehold, a plea that plaintiff was behind in his rent, and had no rights under the lease, is not available where the damage was done prior to proceedings for his eviction.

O'NEAL & O'NEAL for appellant Probst.

W. W. WATTS and KOHN, BAIRD, SLOSS & KOHN for appellant Jefferson Realty Company.

M. A., D. A. and J. G. SACHS and AUGUSTUS E. WILLSON for appellee Hinesley.

OPINION OF THE COURT BY WM. ROGERS CLAY, Commissioner—Affirming.

Lawrence and Saunders Jones were the owners of a lot situated on the southwest corner of Fourth and Jefferson streets, in the city of Louisville, upon which stood the Masonic Temple building. In November, 1903, the improvements on this lot were destroyed by fire. The old walls were torn down, and the property remained vacant until October, 1905. In the meantime the Joneses conveyed the lot to the Jefferson Realty Company. In the fall of 1905 the Jefferson Realty Company entered into a contract with certain persons for the erection of a large building on the lot. The building is now known as the "Paul Jones Building." Galvin & Fox were the contractors who undertook to clean off the premises and remove the debris and foundation walls of the destroyed building. Another contract was made by the Jefferson Realty Company with Herman Probst to do certain work in conection with the erection of the building. Probst then subcontracted with Galvin & Fox to dig the trenches and do part of the general excavating for the new building. Mrs. Pamela Beat-

tie owned the house and lot adjoining the old Masonic Temple on the west. The house thereon was occupied and used by George W. Hinesley as a restuarant. This restaurant was known as the "English Kitchen." Notice in writing was served upon Mrs. Beattie, the owner, giving full details of the nature and character of excavating that would be done upon the Paul Jones property, and the time when the work would begin. Mrs. Beattie in turn notified Hinesley. When the west wall of the Masonic Temple had been removed, the wall of the English Kitchen was left exposed. The earth beneath was soft, and the foundation extended to a depth of only three feet. Mrs. Beattie after conference with Hinesley, employed Kenneth McDonald, Jr., as architect to make plans and specifications for the underpinning of her east wall. Plans were drawn, and the contract for this work let to Galvin & Fox, who in turn sublet the contract for the masonary part of the underpinning to John Hoertz. The excavating on the Paul Jones lot was made to a depth of 19 feet below the street level. Below this level 60-odd pier pits were dug; each pit being about 14 feet wide and 27 feet 10 inches deep. After the work had progressed to some extent, it was found that part of the excavating called "pier pits," though made according to plans and specifications, were not deep enough, and the contractor, Probst, was directed by the architect of the Jefferson Realty Company to make them deeper by blasting them out with dynamite. This blasting was done by Probst, and lasted four or five days. While the work of excavating and underpinning was going on, the walls of the English Kitchen cracked and bulged out and pulled away from the rafters. Sometimes part of the ceiling would fall on guests who were at dinner in the restaurant. Soon thereafter the building was condemned by the authorities of the city of Louisville and ordered to be torn down. At this time Hinesley had a lease on the premises in question, which extended to July, 1906. He vacated the building on January 15, 1906.

On February 6, 1906, Hinesley instituted this action against the defendants Lawrence and Saunders Jones (who were dismissed on peremptory instructions), the Jefferson Realty Company, Herman Probst, Galvin & Fox, Pamela Beattie, and John Hoertz. The petition charges that the work of excavating, removal of earth, and underpinning, made and undertaken by the defendants, were from their very character a nuisance and dangerous to the house and premises under lease and occupied by plaintiff. The petition then charges that the damages to plaintiff were caused by said excavation and underpinning, and the careless and negligent manner in which said excavation and underpinning were done by defendants. Negligence was denied by all the defendants, and the realty company and Mrs. Pamela Beattie also entered a plea of nonliability because the work was done by an independent contractor. Trial before a jury resulted in a verdict in favor of Hinesley, against the Jefferson Realty Company, Herman Probst, and Galvin & Fox, for the sum of $2,500, and judgment was entered accordingly. There being no finding against Mrs. Beattie and John Hoertz, judgment was entered in their favor. From this judgment the Jefferson Realty Company, Herman Probst, and Galvin & Fox prosecute this appeal, and George W. Hinesley prosecutes a cross-appeal as to Mrs. Beattie and John Hoertz.

It would extend this opinion to too great length to set out in detail the various questions raised on the appeal. We shall briefly discuss those that we deem necessary to consider.

As the petition charged that the excavation was done to a depth of 19 feet, and subsequently, in reference to the damage sustained, spoke of said excavation, and as the blasting was done at a depth greater than this, and was only for the purpose of removing the foundations after they had been found to be of insufficient depth, it is insisted that the court improperly received testimony on the question of

blasting, and improperly submitted this question to the jury. We cannot accede to the view that the evidence of excavations to a depth greater than 19 feet should have been excluded because the petition spoke of excavations made only to that depth. This would be taking entirely too narrow a view of the allegations of the petition. The petition charges, not only that the excavation was of such a character as to constitute a nuisance, but that it was negligently and carelessly done. Under these circumstances, we think any evidence of the manner in which it was done and the dangerous character of the means employed was perfectly proper. Indeed, the question of blasting, and of whether or not it was done with ordinary care, and the question of underpinning, were the only ones submitted to the jury. Appellants could not have been surprised by the evidence in regard to the blasting, for some time prior to the trial a deposition was taken, in which the matter of the blasting was fully gone into and discussed. A very sharp issue was made as to whether or not any of the damage was done by blasting. The testimony for Hinesley was to the effect that whenever a blast took place the house was violently shaken, and the ceiling fell on his guests. The shock from the blast was also felt some distance away. The testimony for the defendants was to the effect that only small quantities of powder were used in the blasting, that the place where the blasting occurred was properly covered by timber, and that every care was used in discharging the blast. It was further shown that, between the point where the blasting was done and the wall in question, there was a large portion of ground consisting of sand, which would counteract the effect of any vibration caused by the explosion. There was also testimony to the effect that the underpinning was not properly done. Upon these issues there was abundant evidence upon which to submit the case to the jury, and we are unable to say that the verdict is flagrantly against the weight of the evidence.

It was not error to permit all the defendants to be joined in one suit and judgment to go against part of them. The rule is now well settled in this state that while several may be guilty of several and distinct negligent acts, yet, if their concurrent effect is to produce an estimable injury, they are all liable therefor. The comparative degree in the culpability of the two will not affect the liability of either. If both are negligent in a manner contributing to the result, they are liable jointly and severally. Pugh v. Chesapeake & Ohio R. R. Co., 101 Ky. 77, 19 R. 149, 39 S. W. 695, 72 Am. St. Rep. 392; Brown v. Coxe Bros. & Co. (C. C.) 75 Fed. 689; Cumberland Telephone & Telegraph Co. v. Ware's Adm'r, 115 Ky. 581, 74 S. W. 289; Rutherford v. Illinois Central R. R. Co., 120 Ky. 15, 85 S. W. 199.

But it is insisted that the court erred as to the Jefferson Realty Company in not holding, as a matter of law, that Probst was an independent contractor, or, at least, in not submitting this question to the jury. As to Herman Probst, the question whether or not he exercised ordinary care with reference to the blasting was submitted to the jury. Indeed, the jury were told to find for the defendant Probst, unless they believed from the evidence that the blasting as done was not in the exercise of ordinary care, and unless they further believed from the evidence that the blasting alone, or in connection with the negligence of others, caused or helped to bring about the defective condition of the wall. As to the Jefferson Realty Company, the jury were told that the evidence in the case showed that Andrews, the architect, was competent and capable, that Probst was competent as a contractor, and that they should find for the Jefferson Realty Company, unless they believed that the blasting was naturally and reasonably dangerous and unsafe to the building of the plaintiff, and that the natural and probable result of such blasting was to injure the plaintiff's property. It will be observed that this

instruction does not in any sense make the realty company liable for the negligent manner in which the blasting was done. The evidence shows that Andrews told Probst to use blasting for the purpose of removing the concrete foundations; also, that the superintendent of the building, selected by the Jefferson Realty Company, was frequently present and knew that the blasting was going on; also, that the effect of the blasting was frequently brought to the attention of those in charge of the work. Upon the question of blasting there are two classes of cases. In one line of cases, it is held that injuries to a house from blasting caused merely by the shaking of the earth or pulsation of the air, or both, give no right of action in the absence of negligence in doing the blasting. Bener v. Atlantic Dredging Co., 134 N. Y. 156, 31 N. E. 328, 17 L. R. A. 220, 30 Am. St. Rep. 649; Holland House Co. v. Baird, 169 N. Y., 136, 62 N. E. 149. In the other line of cases, it is held that the work of blasting is necessarily and inherently dangerous, and that a person who undertakes to blast near or so close to another's property as to cause injury assumes all risk of his operation. Joliet v. Harwood, 86 Ill. 110, 29 Am. Rep. 17; Colton v. Onderdonk, 69 Cal. 155, 10 Pac. 395, 58 Am. Rep. 556; City of Logansport v. Dick, 70 Ind. 65, 36 Am. Rep. 166. In the case at bar the court did not fully adopt either one of these views, but very properly, we think, left to the jury the determination of the question whether or not, under the circumstances of the case, the natural and probable result of the blasting was to injure the plaintiff's property. Unless the jury so believed, they had to find for the Jefferson Realty Company. In James' Adm'r v. McMinimy, 93 Ky. 471, 20 S. W. 435, 14 R. 486, 40 Am. St. Rep, 200, the rule is thus stated: "But where he (the owner of the building), as a prudent man, has no reason to believe that the act contracted to be done is a nuisance, but is in itself lawful, and it turns out during the progress of the work that it is

necessary to create a nuisance in order to do the work, then the contractee is not liable for injuries to third persons resulting from the nuisance before he had notice of its existence. But, in such case, upon receiving notice, it would be his duty to take such reasonably prompt and efficient means as are in his power to suppress the nuisance, else he will be responsible for injuries to third persons resulting from the nuisance after notice. See Wood on Master & Servant, pp. 598-612; Robinson v. Webb, 11 Bush. 480.'' While the court, in the case before us, did not submit to the jury the question of whether or not the Jefferson Realty Company had notice of the nuisance, and whether or not it took prompt and efficient means to suppress it, we are of the opinion that under the facts of this case this was not a prejudicial error, for it was conclusively shown by plaintiff (and there was no evidence to the contrary) that notice of the blasting was brought home to the architect and to the Jefferson Realty Company's superintendent, and there was no evidence to the effect that the Jefferson Realty Company undertook, after such notice, to suppress the nuisance.

It is next insisted that the court erred in fixing the measure of damages, and in permitting evidence of the amount of buisness done by plaintiff and the profits thereon. The measure of damages, as fixed by the court, was the diminution of the value of the use of the English Kitchen property for the unexpired term of plaintiff's leasehold. The evidence concerning the amount of business done and the profits thereon was permitted to be heard by the jury for the purpose only of assisting them in determing the value of the use of the property. Under the facts of this case, we think the measure of damages fixed by the court was proper, and that the evidence referred to was properly admitted. Hinesley was not the owner of the property. He was the tenant and in occupation of it. In the case of King v. Board of Council of Dan-

ville, 128 Ky. 321, 107 S. W. 1189, 32 Ky. Law Rep. 1188, where damages were sought by the owner of a mill against a party for building a dam above his mill and diverting the water therefrom, this court held that it was not error to permit the introduction of evidence to the effect that roller flour had supplanted burr flour; that such evidence tended to show the value of the use of the mill. And in Brown & Otto v. Werner, 40 Md. 18, the court said: "Now, if the plaintiff is to be allowed to recover for this injury to his business, it would seem to follow, as a necessary consequence, that the value of that business before the injury, as well as after, not only might, but should, be shown, as an indispensable means of showing the amount of loss from the injury. If the business were a losing one to the plaintiff before, his loss from its being broken up or diminished would certainly be less than if it were a profitable one. It is not the amount of business done, but the gain and profit arising from it, which constitutes its value.' In this case the plaintiff had an established and well-advertised business. The building and location were known to his customers, and the value of the use of the building depended altogether upon the value of the business done by plaintiff.

The plea that Hinesley was behind in his rent, and that he therefore had no rights under his lease, was not available by appellants. The damage was done prior to the proceedings instituted for the plaintiff's eviction. The right to declare a forfeiture was a personal right belonging to Mrs. Beattie.

In the matter of the cross-appeal from the judgment in favor of Mrs. Beattie and John Hoertz, we have concluded that there is no error in the record prejudicial to the substantial rights of Hinesley.

The judgment is affirmed, both on the original appeal and cross-appeal.