## McPherson et al. v. Dukes et al.

November 17, 1950.

A. J. Bratcher, Judge.

Meredith, Iler & Logan and Frank A. Logan for appellants.

C. A. Denny for appellees.

JUDGE KNIGHT—Reversing.

On December 30, 1947, appellant, Guy McPherson, and wife executed a written lease to appellees, Ernest Ray Dukes and R. L. Ford, leasing to them for one year, with a renewal option for five years, a lot on which there was located a two story store and apartment building in Greenville, at the rental rate of $85.00 per month. In addition to the provisions usually contained in such leases, none of which are involved here, it contained these provisions that have given rise to this controversy: (1) The premises shall not be under-let without written consent of the lessors; (2) The lessees shall have the right to the joint use of a parking lot situated adjoining

the premises on the east side thereof. At the same time appellant, Guy McPherson, executed to the appellees a bill of sale by which he sold to them all the goods and merchandise and all the furniture and fixtures located in the store building, except one walk-in refrigerator. In this bill of sale it was agreed that the grantor would not engage in the grocery business in the City of Greenville during the term of the lease and that the grantees would not engage in the poultry, feed, cream or fruit business on the leased premises for the same term.

On August 21, 1948, this suit was filed by appellees against appellant claiming a breach of these written contracts and asking damages in the sum of $2300. The breach complained of is that appellant has disturbed appellees' possession and free use of the house and lot mentioned by erecting on part of the lot a store house in which he is doing business in competition with appellees by selling groceries and provisions; that after appellees had bought and taken possession of the store purchased from him, appellant unlawfully and without right carried away property of the value of $300. By amended petition they asked additional damages of $500 for continuation of the things complained of in the petition and the further sum of $2000 for loss and damage to the fixtures, which they were compelled to store, and the loss sustained in moving the stock of merchandise because they were not able to exercise the five year option on the lease due to the breach of the terms of the two contracts by appellant. They moved out of the store building on December 31, 1948. They prayed for total damages of $4800.

In his answer and counter-claim, appellant denied the allegations of the petition and set up as a further defense that appellees had breached the terms of the written lease by failing to pay rent as provided therein; by selling poultry, feed, cream and fruit in their store in competition with appellant contrary to their agreement not to do so and by under-letting part of the premises to others without appellant's consent to their doing so. He further pleaded estoppel contending that appellees had stood by and watched completion of the building on the premises without complaint.

The issues thus raised by the respective contentions of the opposing parties were submitted to the jury which

brought in a verdict of $750 in favor of appellees. Appellant appeals from the judgment based on that verdict, asking reversal on two grounds: (1) appellees did not make out a case and the lower court therefore erred in failing to peremptorily instruct the jury to find for the defendants; (2) that the court erred in its instructions to the jury.

The evidence on the issues involved are, as usual, highly conflicting. On the $300 item appellees' proof is that when the stock of merchandise was sold to them, nothing was reserved but, in spite of that, after the deal was closed appellant came to the store and removed therefrom some eggs, oranges, apples, lemons, coconuts, onions and a box of mixed cartridges, all of the total value of $320.30, and that these were in the store when the trade was made. On the contrary, appellant's proof was that these items were not in the store but were in the cases upstairs and that they were specifically reserved from the sale by oral agreement between the parties when the contract was being drawn, although no reservation was placed in the contract because the parties agreed at the time that no such reservation was necessary. This made an issue of fact on this item which was properly submitted to the jury under the second instruction given by the court.

Likewise there was conflict in the testimony as to whether appellees first breached the agreements by failing to pay the rent and by engaging in the poultry, feed and fruit business and by sub-leasing a portion of the premises. There was no evidence that appellees engaged to any extent in the poultry or feed business, but there was evidence that they did sell fruit at retail in their store with the knowledge and consent of the appellant from whom they bought part of their fruits. Appellant was engaged partly in the wholesale fruit business and appellees' evidence is that it was only the wholesale fruit business that appellees agreed not to engage in in competition with appellant. The latter's evidence is to the contrary. On the question of sub-letting the apartment, which was above the store, appellees' proof is that the tenant who occupied it when they took over the property vacated it; that they found another tenant, whose wife was kin to appellant, and he consented that the apartment be rented to them and that it would

not be necessary for him to give his written consent. Appellant's proof is to the contrary, thus presenting an issue of fact which was for the jury. Appellees' proof is that the rent was paid in accordance with the contract. Appellant's proof, though weak, was to the contrary. All these issues were properly submitted to the jury under the third instruction of the court.

It is shown by all the evidence that shortly after the lease was executed appellant did build a store room about 16 feet by 40 feet on the east side of and close to the store room leased to appellees and on that part of the lot of which the lessees had the right to the joint use as a parking lot. It is also shown by the evidence that appellant used this store room for his business in which he operated a restaurant and sold ice cream, cold drinks and sandwiches, also potatoes, and perhaps some other items of produce and fruit. He denied that he sold groceries at this store. The evidence of the appellees is to the contrary. This issue of fact was properly submitted to the jury as part of the first instruction given by the court.

There was also conflict in the testimony as to whether appellees stood by without objection while he was constructing the building adjacent to the one he had leased to them. Their evidence was that they did object, while his evidence was that they raised no objections to the building as a violation of the contract and only raised the objection after this disagreement arose late in August when he gave them notice to get out. This issue of fact was properly submitted to the jury in the fourth instruction given by the court.

There was conflict in the testimony as to the extent of the damages appellees suffered as the result of the erection of the building by appellant adjacent to the leased premises. Appellant's testimony was to the effect that no damages resulted and at most only an inconvenience was caused by the necessity of hauling and unloading goods at the back end of the store or at a side entrance which could be reached though not so conveniently as before the building was erected. Appellees' evidence tended to show a steady loss of trade and a reduction of their monthly receipts which they claim resulted from the erection of this building, and other acts complained of, until the receipts almost reached

the vanishing point in December 1948 when they gave up the lease and option to renew it for the five year period; that they were unable to obtain another store in which to operate and they had to move in and consolidate their stock with another retailer and store their fixtures.

The real trouble with appellees' case was their failure to prove with any degree of definiteness the monetary damages sustained by them as a result of the breaches of the two contracts by appellant which the jury apparently found to exist. The damages on the $300 item were definitely and clearly proven by showing the then market value of each of the items which appellees claimed appellant removed from the store without authority. As to the damages flowing from the other breaches complained of, there was no evidence from which the jury could measure these damages with any degree of accuracy. The only thing shown by appellees' evidence was that during the year there was some decline in the monthly gross receipts of the business which was shown to have been as follows: January $3245.59, February $2327.50, March $2459.54, April $2585.11, May $2289.07, June $2072.87, July $1840.73, August $2041.44, September $2256.54, October $1598.39, November $1517.07, December $601.31. There was no evidence showing what profit, if any, was represented by these gross sales and therefore what profit—loss, if any, was sustained by appellees. If the gross sales represented no profit, the decline in gross sales would represent no loss. Before there can be a recovery, it is necessary to show profits with a degree of accuracy. Ky. Utilities Co. v. Warren Ellison Cafe, 231 Ky. 558, 21 S. W. 2d 976. It is not the amount of business done but the gain or profit arising from it which constitutes its value. Probst v. Hinesley, 133 Ky. 64, 117 S. W. 389; Hinesley v. Beatty, 133 Ky. 64, 117 S. W. 389. So while it was for the jury to determine from the evidence whether the actions of appellant were the cause of the loss, if any, sustained by appellees, it was appellees' duty to show what losses they sustained and not leave it to the jury to speculate what these losses were. Therefore it was error for the court to submit the question to the jury under general instruction No. 2 as given. Instead appellant's motion for a peremptory instruction as to damages resulting from the loss of profits should

have been sustained because of failure of appellees' proof. This is likewise true with reference to loss on the fixtures. It is shown by appellees' testimony that they paid appellant $2750 for these fixtures; that when they gave up the lease at the end of the year they sold some of them and stored the remainder. But it was not shown what they had obtained for those sold, what it cost to store the rest, nor was there any other evidence from which the jury could fix any measure of damages except that in the opinion of appellees the remainder of the fixtures left on hand was worth about $400. For all the jury knew from the evidence, they may have sold those that they did sell for as much or more than they gave for them and, therefore, suffered no loss. This again left the jury to guess at the loss sustained, if any. Since the verdict of the jury was a general one, there is no way of knowing whether part of it was for loss on the fixtures or loss of profits or what part of it, if any, was for the merchandise claimed to have been moved by appellant without authority.

While it was perhaps not prejudicial and would not justify a reversal on that ground alone, it is noted that instruction No. 2, as given by the court, authorized a total recovery of $5100 whereas plaintiff sought recovery of only $4800, made up of $2300, as set up in the petition, and $2500, as set up in the amended petition. It is true that in the prayer of the amended petition appellees added up the sums to read $5100, thus misleading the court in giving the instructions. However, it is clear from the context and prayer of the two pleadings that $4800 is the total amount claimed as shown by the record before us. Since the case must again be tried, the error should be corrected in giving the instructions in the next trial.

For the reasons indicated herein, the judgment is reversed for proceedings consistent herewith.