WESTERN UNION TELEGRAPH COMPANY *v.* ALFORD.

Opinion delivered December 8, 1913.

1. TELEGRAPH COMPANIES—ROUTE OF MESSAGE—SENDER OF MESSAGE.— The sender of a telegraphic message, where the initial company does not operate a line to the destination, has the absolute right to select the route beyond the end of the line of the company receiving the message. (Page 385.)

2. TELEGRAPH COMPANIES—ROUTE OF MESSAGE—CONTINUOUS ROUTE.— Where the sender files a message with a telegraph company, and the lines of the company do not extend to the destination of the message, and the sender does not specify the route to be used, if there is a continuous telegraph route to the destination, it will be held that the sender selected the continuous telegraphic route, and the telegraph company will adopt another route at its peril. (Page 385.)

3. TELEGRAPH COMPANIES—SELECTION OF ROUTE OF MESSAGE.—Where a telegraph company, whose line did not extend to the destination of a message delivered to it, but was directed to send the message entirely by telegraph, if the company forwarded the message by telephone to its destination, it will be liable for damages caused by a delay in the receipt of the message by the addressee, although it exercised ordinary care in its efforts to send the message by telephone. (Page 386.)

4. TELEGRAPH COMPANIES—CONTRACT—LIMITED LIABILITY.—The provision in a contract made between a telegraph company and the sender of a message, limiting the liability of the company, is not binding in an action by the addressee of the message, for damages for failure to deliver the message promptly. (Page 387.)

5.  EVIDENCE—INCOMPETENCY—GENERAL OBJECTION—SUFFICIENCY.—In an action against a telegraph company for damages for failure to deliver a message promptly, testimony of witnesses was introduced over defendant's general objection that if inquiry had been made of them they could have directed the defendant where to deliver the message to the plaintiff; the witnesses did not state that they were at the time in a position to be inquired of, concerning plaintiff's whereabouts. *Held*, that while a general objection is ordinarily sufficient to raise the question of the incompetency of testimony, under the facts, the cause will not be reversed where the record fails to disclose that the particular reason for declaring this testimony incompetent as not urged below. (Page 387.)

Appeal from Howard Circuit Court; *Jeff T. Cowling*, Judge; affirmed.

*Geo. H. Fearons, Rose, Hemingway, Cantrell & Loughborough*, and *W. C. Rodgers*, for appellant.

1. An instruction requiring the appellant to have turned over the message to the Memphis, Dallas & Gulf Railway Company instead of calling up the telephone exchange for transmission of the message to the addressee, was harsh and unreasonable.

A telegraph company may make rules and regulations for the handling of messages. 96 Ark. 213-217; 91 Ark. 602-604; 18 Md. 341-358; 46 W. Va. 48; 8 Tex. Civ. App. 176. Their reasonableness is a question for the court. 73 Ark. 205-209; 77 Ark. 531-534; 89 Ark. 483-486.

All parties to a message are held to have consented to all reasonable rules and regulations adopted by the company. 46 W. Va. 48; 15 Mich. 525-535.

There is no proof that the operator at Mineral Springs would have found the addressee. His testimony that he would have made inquiries, etc., amounts to nothing more than mere negative or conjectural evidence. 29 Ark. 448; 86 Ark. 306; 88 Ark. 231; *Id*. 510; 77 Ark. 274; 12 Ark. 782; 43 Ark. 99.

2. The court should have given the peremptory instruction requested by the appellant. Under the stipulation in the contract the company became the agent of the

sender for the transmission of the message beyond its own lines, without liability on the appellant. Its act in turning the message over to the telephone company was the act of the sender, and appellant was not, as instructed by the court, bound in law to forward the message over some *telegraph* company's line. The stipulations of the contract bind both the sender and the addressee. 80 Ark. 554; 130 Cal. 657; 57 Kan. 230; 79 Tex. 65; 64 Fed. 459.

3. There could not properly be a recovery in this case exceeding $50. The contract provides that the company will not be liable in any case for delays except upon payment of an additional sum amounting to one-half the regular charge. The sender may elect to send at his own risk upon the basis of the lower charge, for he is not required by law to pay the higher rate in order to insure against delays. 57 Ark. 112; 33 Sup. Ct. Rep. 391; *Id.* 397; 226 U. S. 491.

*W. P. Feazel,* for appellee.

Both means of communication were open to the sender, and he had the right of selection. When he offered the message to the appellant, paid the charges for its transmission and same was accepted by appellant, he thereby elected to send it, and the transaction constituted a contract to transmit, by telegraph.

McCULLOCH, C. J. This is an action to recover damages for mental anguish growing out of the alleged negligence of appellant in failing to deliver a telegram. The complaint alleged that appellant was a foreign corporation and operated a line of telegraph from Vivian, Louisiana, to Ashdown, Arkansas, and at the latter place connected with a line of telegraph owned by the Memphis, Dallas & Gulf Railway Company from Ashdown to Mineral Springs, Arkansas; that at 7 A. M., September 30, 1912, appellee's brother, T. C. Clark, delivered to the appellant at Vivian, Louisiana, a telegram addressed to appellee at Mineral Springs, Arkansas, as follows:

"Come at once. Arness is very low. T. C. Clark."

That the toll for the message was paid, but appellant wholly failed and neglected to transmit and deliver it; that Arness was a brother of appellee and was at the time very low, and that he died the day following the filing of the message and was buried the next day thereafter. Damages were asked for the mental pain suffered in the sum of $1,500.

In its answer the appellant denied that its line connected with a line of telegraph owned and operated by the railway company from Ashdown to Mineral Springs, and denied that it ever entered into any contract with appellee, or any one for her, to transmit and deliver the message in controversy, but only agreed to transmit it as far as its lines went toward its destination; denied that it had been guilty of any negligence in its transmission, and denied the damages. The answer alleged that by the contract with the appellee it was made the agent of the sender, without liability, to forward the message over the line of any other company that might be necessary.

The proof on the part of appellee was to the following effect: That if the message had been delivered promptly she could, and would have gone to her brother, and, had the message been received at any time before the funeral, that the funeral would have been delayed until after her arrival; but that the message had never been received and she was not advised of her brother's illness and death until after his funeral; that there was a telegraph line maintained along the Memphis, Dallas & Gulf Railroad from Ashdown to Mineral Springs which received and transmitted messages for the public and that the telegraph operator at Ashdown was the joint operator of the railway company and the appellant and that these companies had a common office.

It was admitted that appellant did not operate its lines into Mineral Springs, and the proof offered by it was to the following effect: That the message was routed through Ashdown to Hope as required by the route book and that the operator received the message

there without delay but never transmitted it further by telegraph and mailed it in one of the Western Union envelopes the following morning. The operator at Hope testified that immediately after the message was received a telephone call was put in for the telephone operator at Mineral Springs and the information communicated that there was a death message for appellee, the addressee. The operator at Hope testified that inquiry was made several times of the telephone operator at Mineral Springs, and that the message was mailed the next day, no information having been obtained about addressee, and notified the sending office that the message could not be delivered, but the sender was never apprised of that fact.

The telephone operator at Mineral Springs testified that she received the call on September 30 and that she inquired of several business men in town and also of the postmaster but received no information as to Mrs. Alford's address.

The blank on which the message was written contained the following, among other, stipulations:

"The company is hereby made the agent of the sender, without liability, to forward this message over the lines of any other company when necessary to reach its destination."

In rebuttal, appellee offered the evidence of the telegraph operator at Mineral Springs, who testified what his custom was, in the discharge of his duty, upon the receipt of a telegram where the addressee was unknown to him. And this evidence was of such a character as to make it a question for the jury whether the message would have been delivered had it reached the telegraph operator at Mineral Springs in the due course of transmission and the operator had thereafter discharged his duty in making inquiry for the appellee.

Appellee did not live in Mineral Springs but lived in the country six miles from there, and the message, if sent to her over the telephone from Mineral Springs, or if she had been called over the telephone, could have

reached her only through the telephone of a Doctor Holcombe, who was appellee's neighbor, as appellee had no telephone in her home, but Doctor Holcombe testified that it was his custom to call any neighbor when wanted over the telephone.

Further in rebuttal, one H. O. Campbell was permitted, over appellant's objection, to testify that during the latter part of September and the first part of October, Mineral Springs was a good cotton market and that much cotton was received there during that time.

The court also admitted the testimony of Claude Johnson, a rural mail carrier, and Mr. Crump Stewart, a farmer, both of whom lived in Mineral Springs, to the effect that they knew appellee and could have given her address if inquiry had been made of them.

The jury returned a verdict in favor of appellee, assessing damages in the sum of $350, judgment was entered accordingly, and an appeal has been duly prosecuted to this court.

The primary and controlling question in this case is whether appellant telegraph company had the right to change the nature of the message from a telegram to a telephone message and undertake to deliver it from its nearest office to destination by telephone, or whether it should have continued the message and sent it as a telegram to destination over the line of a connecting telegraph company.

According to the above recitals, the proof shows that there was a connecting telegraph line from Ashdown to Mineral Springs, the destination of the message, and that if it had been sent by that route it would have been delivered to the addressee.

On the other hand, the testimony is sufficient to warrant a finding that the servants of the company at Hope exercised ordinary care to deliver the message by telephone to appellee at Mineral Springs, the point of destination, but failed to discover her.

The court refused to instruct the jury to the effect

that if the company exercised ordinary care to deliver the message by telephone from its nearest office at Hope to the destination at Mineral Springs, it would not be liable.

No cases are cited expressly deciding the question now presented.

It seems to be well settled, however, by the authorities that a sender of a telegraphic message, where the initial company does not operate a line to the destination, has the absolute right to select the route beyond the destination of the company receiving the message. 2 Joyce on Electric Law, § 788B; *Western Union Telegraph Co.* v. *McDonald* (Texas Court of Civil Appeals), 95 S. W. 691.

This right is recognized by the clause in the contract which expressly stipulates that "the company is hereby made the agent of the sender, without liability, to forward this message over the lines of any other company." If the receiving carrier of the message is, under the contract, to be treated merely as an agent of the sender over the connecting line, it necessarily follows that the sender has the absolute right to select the route.

Now, the further inquiry is, since it is seen that the sender has the right to select the route, whether in this instance the sender had selected a continuous telegraphic route, or whether it was left with the telegraph company, at its option, to select another route or method—that by way of the telephone.

It seems to us that the only reasonable view is that, where there is a continuous telegraphic route, and the sender files the message with a telegraph company, that, of itself, amounts to a selection of the continuous route, and such selection must be observed by the telegraph company, and if it adopts another route contrary to this selection it does so at its peril.

There is a distinct difference between a telegraph message and a telephone message so far as the means of transmission is concerned. *Southern Telephone Co.* v. *King,* 103 Ark. 160. By the first method the identical

written words of the sender are transmitted and delivered in that form; whereas, the ordinary method of communication by telephone is for the carrier to furnish the means of communication and the sender and sendee converse directly.

Mr. Gray, in his work on Communication by Telephone, page 182, gives the following as the scope of duty of a telegraph company:

"A telegraph company does not, as the Government does, undertake to transport and deliver the paper upon which the employer writes the intelligence that he wishes to have communicated. It undertakes to transmit, with the aid of electricity, the intelligence contained in that paper to the place of destination, and there to write it out and deliver it to the person addressed."

In a decision by the Missouri Court of Appeals (*Brashears* v. *Western Union Telegraph Co.*, 45 Mo. App. Rep. 433), the court pointed out this definition by the text writer, and added that such "is undoubtedly the usual undertaking of a telegraph company, and, in the absence of a special contract to the contrary, anything short of it would be a failure of duty to the sender. The latter has the right to expect and demand that a copy of the message be promptly delivered to the addressee in person, if he is accessible."

In most instances the same result is accomplished if the message is transmitted from the sender to the sendee, and in that case no damage can result. But where both means of communication are open, the sender undoubtedly has the right to choose which method he will employ, and, as before stated, it is clear to us that the filing of a telegraphic message is a selection of that route and mode of communication.

It follows that if appellant ignored the selection thus made by the sender and undertook to send by another method and route, it is liable, if the forwarding of the message by the route selected by the sender would have accomplished a delivery, even though the company ex-

ercised ordinary care in its effort to send the message by telephone. *Western Union Telegraph Co.* v. *Turner,* 94 Tex. 304.

The instructions of the court were conformable to this view of the law, and we think the case was correctly submitted to the jury. It is unnecessary to set out the instructions or discuss them at length.

The contract contained a limitation of liability to the sum of $50, and that is pleaded in this case. But the question is decided adversely to appellant's contention in the recent case of *Western Union Telegraph Co.* v. *Hearn,* 110 Ark. 176.

It is insisted that the court erred in admitting the testimony of witness Campbell, as to the cotton market at Mineral Springs, at the time the message was sent; and also the testimony of witnesses, Johnson and Stewart, to the effect that they could, and would, have given to all inquirers information as to the whereabouts of Mrs. Alford, the appellee.

The testimony of witness, Campbell, is of very little probative force, but it tended to establish the fact that Mineral Springs was being patronized at that time as a cotton market, which necessarily brought many farmers to town, and this tended to corroborate the testimony of the telegraph operator at Mineral Springs in his statement that, if the message had been received, he could, and would, have found some method of getting the information to Mrs. Alford concerning the message so that it could be delivered to her.

The objection now urged to the testimony of witnesses, Johnson and Stewart, is that they did not show that they were in Mineral Springs on the day and at the hour when the message was sent, and for that reason their testimony was incompetent.

It may be conceded that the testimony was not competent unless the witnesses were in position at the time to have been inquired of concerning the residence of Mrs. Alford; but we do not think that the objection was

made in a way that called the court's attention to it. Each of the witnesses stated that he resided in Mineral Springs on the day that this message was sent; that he was acquainted with Mrs. Alford and knew where she resided, and that if inquiry had been made of him, he would have given information as to where she lived and how she could be communicated with. They were not asked whether they were in town and on the streets that day, but we think there is a fair inference from their testimony that they meant to say that they were in a position on that day to have given information if inquiry had been made of them. At any rate, we think that fairness to the plaintiff and to the court demanded that attention should have been called to the fact that objection was made on that ground. Counsel for appellant waited until the final question was asked whether they would have given information concerning the whereabouts of Mrs. Alford if asked, and then they made a general objection without specifying the grounds.

We do not overlook the well-settled rule that a general objection is ordinarily sufficient to raise the question of incompetency of testimony; but the appearance of the objection in this record as a general one convinces us that neither the court nor counsel had in mind the fact that these witnesses had not been sufficiently specific in their statements concerning their presence at a time and place where inquiries would likely have been made of them. If we were to sustain this objection now and reverse the case, it would be upon a point apparently that was not urged below.

Upon the whole, we are of the opinion that the case was fairly tried and that appellee's case was fully made out so as to warrant the verdict. Affirmed.

SMITH, J., dissents.