## Western Union Telegraph Company v. Smith.

(Decided April 23, 1915.)

### Appeal from Pike Circuit Court.

1. Telegraphs and Telephones.—Where a party files a message for transmission over a telegraph line, that act is a selection of the route, over which it is to be transmitted, if there is a continuous telegraphic line, from the point where it is filed to the point of destination.

2. Telegraphs and Telephones—Failure to Deliver Message.—Where a person selects a telegraphic line over which to have a message transmitted, and there is a continuous telegraphic line to the point of destination, the telegraph company is not excused for a failure to deliver the message, if the company undertakes to send it for the whole or a part of the route by telephone, although the telegraph company and the telephone company may exercise ordinary care to transmit and deliver the message with diligence and dispatch.

8. Telegraphs and Telephones—Delivery of Message.—If a message is sent by telegraph, and the telegraph company undertakes to send it over a part of the route by telephone, and succeeds in delivering the message, within such a time, that the sendee does not suffer any damages for the failure to receive it with reasonable diligence and dispatch, a complaint of the sendee can not be sustained.

4. Telegraphs and Telephones—Delivery of Message.—Where a telegraphic message is addressed to one person, in care of another, and the telegraph company delivers it to the person in whose care it is sent, with reasonable diligence and dispatch, it has performed its contract.

5. Telegraphs and Telephones.—A telegram to B. F. Smith, in care of the Consolidation Coal Co., has the same legal effect, as a telegram to the Consolidation Coal Co. for B. F. Smith.

6. Telegraphs and Telephones—Delivery.—A telegram to one person, in care of another, makes such person the agent of the sendee, to receive such message, and not the agent of the telegraph company to transmit and deliver the message.

7. Telegraphs and Telephones—Delivery.—A telegraphic message to a person, in the care of a corporation, makes the corporation the agent of the sendee to receive and deliver the message to

him, and the telegraph company may deliver the message to the corporation in the same way it should deliver a message addressed to the corporation, and if it does so, with reasonable diligence and dispatch, it thereby fully performs its contract.

J. J. MOORE, RICHARDS & HARRIS and GEORGE H. FEARONS for appellant.

ROSCOE VANOVER for appellee.

OPINION OF THE COURT BY JUDGE HURT—Reversing.

The appellee, B. F. Smith, was engaged in the service of the Consolidation Coal Company, in the town of Jenkins, on May 9th, 1913. His mother and brother, M. L. Smith, resided at Cuckoo, Louisa County, Virginia, near Fredricks Hall. The Western Union Telegraph Company had an office at Fredricks Hall, and lines extending from there to Ashland, Pikeville, Shelby, and Jenkins. It seems from the evidence in the case, that a message sent over the telegraph line from Fredricks Hall to Jenkins, passed through Pikeville, Ashland, and Shelby. For some reason or other there was no direct connection from Ashland to Jenkins. A message had to be sent to Shelby, and there "relayed" over another wire to Jenkins. This made a very uncertain service over the telegraph line, because the operator at Shelby, possibly on account of other duties, was hard to reach, and frequently it was necessary to call him for hours before he could be obtained to receive a message, and "relay" it to Jenkins. The Consolidation Coal Company was a very large corporation, doing a great deal of business in the way of mining coal, and employed about two thousand men, and received from fifteen to forty messages over the appellant's lines each day. A telephone line, which was owned by one Starkey, who was the manager of the office of the Western Union Telegraph Co. at Pikeville, extended from a room adjoining the telegraph office at Pikeville, to Jenkins, and connected with the switchboard of the telephone office owned by the Consolidation Coal Company, and situated in the office of that company at Jenkins. On account of the bad service of the telegraph line from Ashland to Jenkins, messages were frequently delayed for various lengths of time. For the purpose of avoiding these troubles and delays, the manager of the Consolidation Coal Company directed the manager of the Western Union Telegraph Company

at Pikeville, to take all messages which came over the wires for the Consolidation Coal Company, and all messages addressed to other persons, in care of the Consolidation Coal Company, and to telephone them from Pikeville to its office in Jenkins. The Consolidation Coal Company employed a young lady, Miss Ella Mann, to receive these messages which came over the telephone to its office in Jenkins, and it seems that it was a part of her duties to send the messages received in the care of the Consolidation Coal Company, to the persons to whom they were addressed, if she could do so. She was assisted in this duty by the office boy of the Consolidation Coal Company, who assisted in delivering the messages.

On the 9th day of May, 1913, M. L. Smith delivered a telegram over the telephone to the Western Union office at Fredricks Hall, to be transmitted to the appellee, at Jenkins, in the care of the Consolidation Coal Company. He paid the charge required for the transmission of the telegram by the appellant.· The message was filed about eight o'clock A. M., and was taken off the wires at Pikeville at ten thirty-six, A. M. The operator of the appellant at Pikeville was then engaged in sending other messages, but as quick as he had sent away the previous messages received, he transmitted the message from M. L. Smith to B. F. Smith, in care of the Consolidation Coal Company, over the telephone lines to Jenkins, where it was received by Miss Mann, whose duty it was to receive the messages for the Consolidation Coal Company, and in whose employ she was for that purpose. She received this message not later than eleven thirty-five A. M., on the day of its transmission from Fredricks Hall. B. F. Smith, the appellee, was at that time, as he states, in one of two places, one of which was about five minutes' walk from the railroad office in Jenkins, and the other about one-half mile from that place, but he is unable to say at which place he was. He, furthermore, stated, that the officials of the Consolidation Coal Company at that time knew of his whereabouts. Miss Mann, however, did not know him, nor where he could be found, and she called upon the persons having the pay roll of the Consolidation Coal Company to learn who he was and where he was, but she failed to receive any definite information, except that someone informed her, that he was then working at the bakery of the company. She

delivered the message to the office boy of the company, with directions to take it to the commissary of the Consolidation Coal Company, and from there to be transmitted to the appellee at the bakery. The appellee was not working at the bakery, and no one there knew him or his whereabouts, and on the evening of the next day the message was returned undelivered, and never was actually delivered to the appellee. The message was as follows:

"Fredricks Hall, Va., May 9th, 1913.

"B. F. Smith, Care C. C. Co., Jenkins, Ky., via Pikeville, Ky.

"Mother very ill. Come at once. Wire answer.
                                "M. L. SMITH."

Either on that day or the day following, Miss Mann informed the Western Union office at Pikeville, that she had failed to deliver the message. On the 12th day of May, another message arrived from M. L. Smith to appellee, and was transmitted in the same way from Pikeville, over the telephone lines, to the office of the Consolidation Coal Company. Someone informed Miss Mann, at that time, that the appellee was in the service of the railroad company, and she immediately sent the message to the agents of the railroad company at its office in Jenkins. In the meantime, the appellee had received a letter from the physician of his mother, informing him of her dangerous condition, when he went to the railroad office to write a letter in reply, when the message was delivered to him by some person at the office of the railroad company, immediately upon his arrival at the office, and he immediately sent a telegram that he would leave for his mother's home at once. At this time, one passenger train left Jenkins for Pikeville, at eight o'clock A. M., and another train left at two o'clock P. M. If the first telegram had been delivered to appellee, at any time before 2 o'clock P. M., on the day of its arrival, he could and would have taken a train at two P. M., and have reached the home of his mother on the 11th, at one P. M. On account of connections, if he had have left on the morning of the 10th, at eight A. M., he would have arrived at his mother's home at one P. M. on the 11th, and practically at the same time as if he had left Jenkins on the two o'clock P. M. train.

His mother had become ill on the 4th of May, and on the 8th had grown dangerously so, and the telegram was sent to the appellee on the 9th. The second telegram received by him was about three-thirty P. M., on the 12th, and he left Jenkins at eight o'clock A. M. on the 13th, and arrived at his mother's home at one o'clock P. M. on the 14th. His mother had died previous to his arrival on the 13th, from the illness from which she had suffered, but was not buried until after appellee's arrival, and on the 15th, he was present at her funeral services.

Previous to the sending of either of these messages, the appellee had directed his brother, M. L. Smith, that in the event he had necessity to send him any message by telegraph, to address it to him at Jenkins, in the care of the Consolidation Coal Company, and it was, also, previous to this, that the Consolidation Coal Company had directed Starkey, the manager of the appellant's office at Pikeville, to send all messages for it and all messages for other persons in its care, by way of the telephone line to Miss Mann, or to Mr. Campbell, who was one of its chief clerks, or whoever might answer its telephone calls at its office at Jenkins. The appellant had nothing to do with the employment of Miss Mann, and she was in nowise in the service of the appellant.

The appellee filed this suit in the Pike Circuit Court, in which he sought to recover of the appellant the sum of $3,000.00 in damages, alleging as the basis of his claim, that the appellant, by its negligence, had failed to transmit or deliver the telegram to him, which was sent to him by his brother on May 9th, and for that reason he was prevented from being at the bedside of his mother previous to and at the time of her death, which he could and would have done, if he had in due time, received the telegram, and that for such reason, he had been caused to suffer mental anguish.

The appellant, by its answer, denied that it negligently and carelessly failed to either transmit or deliver the telegram, or failed at all to transmit or deliver it. It denied that it failed to use due diligence in the transmission and delivery of the message, or that appellee was deprived of the opportunity or satisfaction of being with his mother during her last illness and death, or that he was deprived of that opportunity by any negligence of the appellant, or that he was caused to suffer mental anguish or pain.

By a second paragraph of the answer, the appellant plead that the message was addressed to the appellant, at Jenkins, in care of the Consolidation Coal Company, and that at that time it did not own any line from Pikeville to Jenkins, but that after it received the message for delivery, it promptly transmitted the message to the Consolidation Coal Company at Jenkins by telephone, and there delivered same to the agents of the coal company at Jenkins, who were employed to receive such messages, and that the route by which it sent the message from Fredricks Hall to Pikeville, Ky., and from Pikeville to Jenkins, was the only way by which a message could be delivered, and delivering it to the agents of the Consolidation Coal Company at Jenkins, the appellant had completely performed its entire duties in receiving and transmitting the message according to its contract. The affirmative allegations of the answer, by agreement of parties, were considered as controverted of record.

Upon the trial of the case before the court and a jury, a verdict was returned in favor of the appellee in the sum of $1,500.00 in damages, and judgment was rendered accordingly. At the conclusion of the evidence for the appellee, and, also, at the conclusion of all the evidence, the appellant moved the court to direct the jury peremptorily to return a verdict in its favor, which motions were overruled, and exceptions taken by the appellant. After the trial the appellant filed grounds and moved the court to set aside the verdict and judgment and to grant it a new trial, which motion was overruled and the appellant excepted.

The grounds relied upon for a new trial were: First, the failure of the court to sustain appellant's motion to direct the jury to find a verdict for it. Second, alleged errors in permitting incompetent evidence offered by appellee to be heard by the jury, over the objection of the appellant, and to which it excepted at the time. Third, because the court erred in refusing to instruct the jury as requested in writing by the appellant. Fourth, because it misinstructed the jury on the motion of the appellee. And, fifth, because the amount found by the jury as damages which appellant had suffered was excessive. These grounds will be considered in the order in which they are stated above.

The proof in the case showed that a message could have been sent by a continuous line of telegraph from Fredricks Hall to Jenkins, and that the appellant had an office at Jenkins, but the proof, also, showed, for the reasons before stated, that it was very difficult to get a message from Ashland to Jenkins by telegraph, and it would necessarily have to go to Ashland in order to reach Jenkins by telegraph. If there is a continuous telegraphic route from the office where the telegram is filed, to its destination, and the sender files a telegraphic message, it has been held that that is a selection by the sender of the route, over which he desires the message to go, and the telegraph company is liable in damages, if without authority from the sender, it selects another route, by which the message fails to arrive at its destination, although ordinary diligence was used by the company, and the persons through whose hands it attempts to send the message by the route adopted by the telegraph company. W. U. T. Co. v. Alford, 161 S. W., 1027; W. U. T. Co. v. Turner, 94 Texas, 304. In the case of Taylor v. W. U. T. Co., 136 Ky., 1, a telegram was addressed to a person at a certain postoffice box, and this court in that case held, that, if the company had, within a reasonable time, put the telegram properly addressed, in the postoffice, it would have then performed its contract. The court, also, said in that case, that, if the company had, instead of putting the telegram in the postoffice, have found the person to whom it was sent, and delivered it to him within a reasonable time, that no complaint could have been sustained. While that particular point was not presented for determination in the case, *supra*, it accords with reason and common sense, that, although the telegraph company should fail to send a message by the route selected, but should actually, within the time necessary to prevent the sendee from sustaining any damages by reason of the failure to receive it, find the sendee and deliver it to him, there could be no just cause of complaint. The prime purpose in addressing a telegram to another person, is that it should be received by such person with all reasonable diligence and dispatch, and not that it should be sent by any particular route, and delivered in any particular way. The sendee of a telegraphic message is entitled to have it written out in the exact words in which the message is sent, and delivered to him. Al-

though the sender of the message, in the case at bar, did not designate any particular route over which it should go, but the fact that he selected the telegraph line by which to send it, the appellant could not excuse itself if it should select another route, as by telephone, and fail to make delivery of the message within a reasonable time, because, under the authority of W. U. T. Co. v. Alford, *supra,* in such a state of case as that, the telegraph company must be considered to have assumed the risk of a failure of delivery, when it changed the route of the message from the telegraph line to a telephone line. The sender of the message in this case addressed it to the appellee, in care of the Consolidation Coal Company, and he did this by express directions of the appellee. He, therefore, made the Consolidation Coal Company his agent to receive the message for him and to deliver it to him. In the case of W. U. T. Co. v. Shaw, 40 Texas Civil Appeals, 277, the court used this language: "The sending of a message in care of a corporation, necessarily constitutes such corporation the agent for the sendee to receive such message. The delivery to the corporation would undoubtedly relieve the company of responsibility (W. U. T. Co. v. Young, 77 Texas, 245; W. U. T. Co v. Barefoot. 76 S. W., 915), and is made in precisely the same way as though the corporation was the principal addressee."

There is no complaint that there was any unreasonable delay in transmitting the message from Fredricks Hall, and its receipt at Jenkins by the Consolidation Coal Company. The proof shows, without contradiction, that if the message had been or could have been delivered by the Consolidation Coal Company, who received the message between eleven and eleven thirty o'clock A. M., on May 9th, at any time, between then and eight o'clock A. M., on the following morning, the appellant would have received it in time to have enabled him to leave by a train, which would convey him to his mother's home at the earliest possible time. The appellee, however, contends that the message should have been delivered to him, and a delivery of it to the Consolidation Coal Company did not amount to a delivery to him, and its transmission to and receipt by the young lady employed as the telephone operator by the coal company to receive all messages arriving for it, was not a delivery to the Consolidation Coal Company. In this view, however,

we cannot concur. To send a telegraphic message to B. F. Smith, in care of the Consolidation Coal Company, is the same as to send it to the Consolidation Coal Company, for B. F. Smith. In W. U. T. Co. v. Pearce, 95 Texas, 578, a telegram had been sent to Mrs. Young, in care of W. R. Henry & Company, and the court, in that case said: "The liability of the company must be determined by the terms of its contract. Its obligation was not to deliver to W. R. Henry & Company and Mrs. Young, but to deliver to them as her agents, properly addressed to her, to be dealt with by them as they deemed best. To deliver to Mrs. Young, in care of W. R. Henry & Company, has the same meaning and legal effect as it would have had if the delivery had been to W. R. Henry & Company, for Mrs. Young."

In W. U. T. Co. v. Barefoot, 97 Texas, 159, a message had been sent to one Fant, in care of D. Sullivan & Company. The court in passing upon that case held, that the telegraph company might have delivered the message to D. Sullivan & Company and been fully discharged of its contract, without making inquiry for Fant at all.

In Lefler v. W. U. T. Co., 131 N. C., 355, a message was sent by telegraph to Lefler, in care of the Southern Railway Company, and the court held, that the telegraph company could have lawfully delivered the message to the Southern Railway Company at once, and that as the company was made the agent of the sendee for receiving the message, a delivery to it of the message was a delivery to the sendee.

The sender of a message by telegraph to a person in the care of another person, could not possibly have any other meaning than that the message should be delivered to the person in whose care it was sent, because, if the sender did not design that such should be done, there would be no reason for sending it in the care of such person. The conclusion must follow, that a delivery of the message to the Consolidation Coal Company was a delivery to the appellee. According to the authorities above mentioned, neither the Consolidation Coal Company, nor its operator, Miss Mann, were the agents of the appellant for the delivery of the message, but they were the agents of the appellee to receive and deliver the message to him, and if any negligence occurred in the failure of the Consolidation Coal Company or

Miss Mann to put the message in the hands of the appellee within a reasonable time, it was the negligence of his own agents, and not the negligence of the appellant. The appellee, himself, selected the Consolidation Coal Company, as his agent to receive any message coming over the telegraph lines to him. He was in the employ of the corporation, and must be considered as knowing the manner in which it transacted its business in the receipt and delivery of telegrams which came to it. A corporation cannot act, except through and by its agents, and in a large corporation of the character of the Consolidation Coal Company, it must have a great many agents. The message in this case was delivered to and received by that agent of the corporation which had been designated by it for that purpose, and whose business and duty it was to receive the telegraph messages which came to it, and it would be unreasonable to contend, that a delivery of a message to such agent was not a delivery to the corporation itself.

In the case of W. U. T. Co. v. Shaw, *supra,* the court held, that the delivery of a message sent to an individual, in care of a corporation, must be made in precisely the same way as if the corporation was the principal person to whom the message was addressed. If this message had been addressed to the Consolidation Coal Company it would have been delivered in precisely the same way. that the message was delivered to it, which it received for the appellee in this case. Our conclusion then is, that the appellant fully performed its contract when it delivered the message, as it did deliver it, to the telephone operator for the Consolidation Coal Company with reasonable diligence and dispatch.

There is no contradiction of any of the evidence in this case, and it is a well-known rule of law, that where the facts of the case are undisputed, and but one legitimate inference can be drawn from them, the court, and not the jury, should determine their effect. W. U. T. Co. v. Teague, 134 Ky., 601; Thompson v. Brannin, 40 S. W., 914.

The court below was, therefore, in error when it instructed the jury that the operator of the telephone office of the Consolidation Coal Company at Jenkins, was the agent of the appellant, for the delivery of the telegram, and the facts being undisputed that the telegram was sent to appellee in care of the Consolidation.

Coal Company by his directions, and was transmitted to the Consolidation Coal Company, by the appellant, and delivered to the person authorized to receive it by the Consolidation Coal Company for it within a reasonable time and with reasonable dispatch, the court erred in overruling the motion of the appellant to instruct the jury to peremptorily find a verdict for it.

With this view of the case, it is unnecessary to discuss the other grounds for a reversal presented by the bill of exceptions.

The judgment appealed from is, therefore, reversed, and the case remanded, with directions to proceed in conformity to this opinion.