## Purcell v. Michigan Fire & Marine Ins. Co. of Detroit.

July 15, 1943.

Fritz Krueger and Robert B. Bird for appellant.

Ogden, Galphin, Tarrant & Street and Edwin R. Denny for appellee.

OPINION OF THE COURT BY PERRY, COMMISSIONER—Affirming.

The appellant, Mrs. Purcell, who was plaintiff below, brought this action against the appellee, Michigan Fire & Marine Insurance Co., hereinafter called the "company," to recover on an insurance policy issued her, insuring her against loss by "theft, robbery and pilferage" of her certain automobile therein described.

Plaintiff in her petition alleged that on the night of August 3, 1941, and while this contract of insurance was in force, her car was stolen by persons to her unknown; that on the morning following, some few hours after its alleged theft, the car was found but in a wrecked and demolished condition, at the foot of a cliff, some twenty-five or thirty feet high, in an old quarry, located on the Maple Grove road, some two and a half or three miles distant from plaintiff's home in Mt. Vernon, Ky., and that immediately after the car was stolen, notice of such fact was given both the defendant and police.

The company by its answer denied that notice of loss had been given it in accordance with the provisions of the policy and further denied that the insured car was stolen. A reply was filed, completing the issues.

A trial had before a jury on this factual issue, as to whether or not the car was stolen, resulted in a verdict in favor of appellee.

Appellant asks a reversal of the judgment entered on that verdict for: (1) Error in overruling plaintiff's motion for a peremptory instruction, made at the close of all the evidence; (2) because the verdict was flagrantly against the evidence; (3) error in permitting the introduction of prejudicial testimony on behalf of the appellee; and (4) misconduct on the part of counsel for appellee in reading to the jury a statement purporting to be an affidavit, when, as a matter of fact and as the record discloses, it was not an affidavit nor a copy of an affidavit.

The witnesses who testified in behalf of appellant, to maintain her position on this issue, were herself, her

husband, Ben Purcell (hereinafter called Purcell), and his friend, Ed Burnett.

The testimony of the plaintiff went no further than merely stating that she was the owner of the car in question and that at about six o'clock on the evening of August 3, 1941, the night the car was allegedly stolen, her husband, Purcell, with her consent, took her car and drove away in it; that she did not thereafter see him until his return the following morning, about seven o'clock, when he was brought home by his friend and witness, Ed Burnett, in his car.

Plaintiff's husband, Purcell, was her only witness who undertook to positively relate the time, place and circumstances under which the car was stolen from him, though by his testimony he gives but a very vague, confused and unsatisfactory story as to what transpired on this night in evidence, during which he was entrusted with and had the use, control and the driving of plaintiff's car. Further it appears that Purcell was plaintiff's only witness who was in a position and did purport and undertake to directly and positively testify both as to the fact and the attendant circumstances under which it is alleged her car was stolen from him on the night in evidence.

He testified, in effect, that his wife, though the owner of the car, did not herself drive it, but that he and his daughter, who each had a separate set of car keys, did; that on the evening in question his daughter had been driving the car and had left the keys in the ignition switch; that he, when starting to use the car, removed his daughter's keys from its ignition switch, placed them in the glove compartment of the car, and inserted his own key in the switch; that, according to his story, he left his home about six o'clock, drove down town, where he "milled around" until about ten o'clock, when he left Mt. Vernon and drove out a couple of miles to meet an unnamed and unidentified party in the country at an agreed meeting place; that he first stopped, for fifteen or twenty minutes, near the point of intersection of the Burr and Brush Creek roads and then drove on to the road that goes to Maple Grove, when, at about eleven o'clock, he again stopped and parked his car on the Maple Grove road at a point about a hundred or two hundred yards off of and beyond its point of intersection with the Brush Creek road, though he did not

know just how far this second stopping place was off the road, where he awaited the expected coming of his "date;" that his "date" soon met him and that they remained there until about eleven-thirty, when, after first locking his car, which was headed towards the Maple Grove or Ridge road, and pocketing his keys, they left together, going to some unnamed place on some mission not divulged by the evidence.

Further he testified that at about two-thirty (or some two and a half or three hours thereafter) *he* returned to the place where he and his unnamed companion had together left his car parked and found it gone; that after first there looking around for it, he walked out the Maple Grove road for a distance of some five or six miles, hunting his car or until he came, at about daybreak, to the home of the witness Harve Bond, located on a side road, about a mile and a half off the main or Maple Grove road and a mile or two from the quarry where the wrecked car was found.

Purcell, when asked if he were not lost when he got to Bond's, answered that he would not say he knew where he then was, as it was the first time he had been in that country. When further asked if he did not "tell Bond he had a car over there somewhere, but didn't know where," he evasively answered, *"Not in those words."* Further, he denied that he was intoxicated when he reached Bond's home or that he asked Harve Bond to let him go into his house to get some sleep, or to take him home in his car as he went to work or to the store of his friend, Ed Burnett, at Brush Creek, but testified that Bond volunteered to take him to Ed Burnett's at Brush Creek and did, arriving there around six o'clock, when, after telling Burnett about having lost his car, Burnett drove him to Mt. Vernon; that on their way to Mt. Vernon, they stopped at a roadhouse, where he (Purcell) bought and drank two bottles of beer; that on arriving at Mt. Vernon, they first stopped at Finnell's garage, where Burnett, in Purcell's presence, reported the loss of his car and requested that they send out their wrecking crew to bring it in.

Both Burnett and the employee to whom he talked state that Purcell was drunk or asleep, and that Burnett then took him to his home.

Burnett denies that when stopping at the garage he told them, in Purcell's presence, where to go and get

Purcell's car or that "Purcell had wrecked his car over there and didn't know where it was" and for them to send out their wrecker and get it.

Purcell was further asked on cross-examination if he had not gone out on a "blind date" that night, to which he answered: "No, it was not a blind date. I knew where I was going." When asked if he had not parked his car at the Maple Grove school house that night, he answered: "No." He was then asked if he had not made and signed a statement in Lexington as to the facts and circumstances under which he claimed that his wife's car had been stolen from him on the night in question, to which he answered that he did make such a statement and did sign and swear to it. Thereupon he was asked if at that time he made the following statement, which was read to him:

"On August 3, 1941, at or about 6 P. M. I left my home at Mt. Vernon, Ky., and drove 1939 Plymouth two-door sedan to town. I 'milled' around town until about 10 P. M. I then left Mt. Vernon, Ky., for the Maple Grove School House 'having a blind date' and left there about 11 P. M. but parked the car at the school house. About 1:30 A. M. I returned to where I parked the car but it was not there. I then walked about 3 or 4 miles out the Maple Grove Ridge and caught a ride to Brush Creek, Ky. I do not know the man who gave me the ride. I then went to Ed Burnett's store at Brush Creek, Ky., and he took me to my home at Mt. Vernon, Ky. I arrived home about 6:30 A. M. and went to bed. Enroute to my home, however, Mr. Burnett stopped at the Mt. Vernon garage, Mt. Vernon, Ky., and asked them to try to find my car. I did not report the matter to either County Sheriff's office or Police Department. * * *

"After parking the car I locked same by door locks and ignition and placed keys in my pocket.

"I have read the above statement and the facts contained therein are true.
"(Signed) Ben Purcell."

He answered, "Not that statement." He was then asked, "Didn't you just before your attorney objected tell this jury you made that statement in substance?", to which he answered, "This statement is some different

from the statement I made." When asked in what particular the statement he made was different from that read to him, he answered, "It varies in several different ways, and one thing I said in the statement I made in Lexington before Hill (was that) I walked practically a quarter of a mile from Maple Grove school house," thus pointing out only the one small and immaterial variance between his statement and the one read him as to the distance walked by him from the Maple Grove school house. He was then asked, "Didn't you tell me a few moments ago you walked a hundred or two hundred yards from Brush Creek road, now you say a quarter of a mile from Maple Grove school?", to which he answered, "Yes sir." At this point plaintiff's counsel attempted to present and show to the witness testifying, Ben Purcell, the statement read to the jury by counsel for defendant. Whereupon, counsel for defendant refusing to allow plaintiff's counsel to show said allegedly contradictory statement to the witness, the court admonished the jury that they would not consider "any statement read from the statement by E. R. Denny, attorney for defendant," to which ruling of the court the defendant at the time excepted.

Plaintiff's counsel then, after the court sustained his objection to the reading of the statement, further asked his witness, Purcell, to state to the jury whether or not the writing read to him and to the jury was a true and correct copy of the statement he had signed and given to the insurance company, to which he answered, "No sir."

Whether counsel for plaintiff, by thus questioning him as to the statement after his objection to its reading had been sustained, thereby waived his objection is not here material, as plaintiff could not have been prejudiced by its reading where the court admonished the jury not to consider it. Moore v. Wilson, 230 Ky. 49, 52, 18 S. W. (2d) 873.

Ed Burnett, plaintiff's further witness, testified that on the night in question he was sitting up with some "sick folks" near the Maple Grove church, at the home of Andrew Miller, which is located on the Maple Grove road beyond the place where Purcell states he parked and left his car; that at about twelve o'clock that night, he saw an automobile pass Miller's home and that it did not return during the time he was there; that Ben Pur-

cell came to his place at Brush Creek about six-thirty the next morning, when he drove him on to Mt. Vernon and Finnell's garage and then home. He states that on the way to town, Purcell drank a bottle of beer, which made him drunk, but before that he was "perfectly all right," although he had been drinking during the night, and that later he (Burnett) reported the loss of the car to the sheriff. Further, in rebuttal, he denied having told anyone that Purcell had wrecked the car and that when he first saw him, when he came to his home, there was no blood on him. He further testified that the stone quarry, the place the car was found, is in the near neighborhood of Bond's home, where Purcell appeared about daybreak, which was about two miles from the intersection of the Maple Grove and Brush Creek roads, or near the place Purcell testified he had parked and left his locked car, headed towards the Ridge road and the witness Bond's home.

A summary of the further testimony of the witnesses introduced by the company, as constituting circumstantial evidence patently tending to contradict and refute as improbable Purcell's positive evidence that the car was stolen from him, is as follows:

Harve Bond stated that he worked as a section hand for the L. & N. R. Co. and lived about two miles from the intersection of the Maple Grove and Brush Creek roads, a distance an average walker would travel in forty or fifty minutes, but that it would take a drunken man much longer to travel it, Purcell having testified that it took him some three hours to walk the two mile distance between the place where he had parked his car at two or two-thirty and arrived at Bond's home about five-thirty. Further Bond testified that Purcell came to his home about the "crack of day" or around four o'clock in the morning. In answer to the question asked him as to what was Purcell's condition when he came to his house, he replied as follows:

"Well, the first I knowed now about him, I was sitting there milking and I heard a racket and I looked around and he says, 'What are you doing out here.' I said, 'I am milking.' I said, 'What are you doing?' He said, 'I have been out all night. I drank some liquor at Winstead's place last night about ten o'clock and I don't remember anything that happened since.' He says, 'Where can I find

any water?' and I showed him the spring and he came back and said he couldn't find any spring and I went on milking and when I started to the house he said he couldn't find any spring and I said, 'Do you hear that water running down there?' and he said, 'Yes' and I said, 'Right there you can find water' and I went on to the house and he went on. I was on the porch after that and I heard him talking to the cook on the back porch, I had a hired girl as my wife was sick, I went out where he was at and asked him who he was and he told me who he was and he says, 'Can you fix a place in there for me to lay down and sleep?' and I said, 'Mister, my wife is sick and you are drunk and you look like you have been in a fight and you are not going in the house.'

"Any blood on him?

"Yes sir.

"Go ahead?

"He says, 'I am all right' and he jerked his driving license out and he says, 'I have a car somewhere.' I said, 'You are all right but my wife is sick and you are not going in.' He says, 'Can you take me to town?' I says, 'I can't, I have to work.' He says, 'Will you let me go to Brush Creek with you, if I can see Ed Burnett I will be all right.' We went out and we came to Brush Creek. * * *

"Mr. Bond, what, if anything, did Mr. Purcell say about his car while he was out at your house?

"All he told me anything about the car, I recall he told me he had a car and he didn't know where it was at, then he showed me his license.

"Say he was drunk at that time?

"Yes, he was drunk."

Howard Dash, also called as a witness for the company, testified that he was employed in Finnell's garage at Mt. Vernon as a mechanic and that he and Willis Gaskin, his co-employee, were in the garage when Burnett and Purcell came in; that Purcell at the time was either asleep or drunk; that *Burnett told him that Purcell had wrecked his car off the Maple Grove school road.* When asked if he got information from Ed Burnett where to go for the car, he answered, "Yes sir," that "he said

Ben had wrecked his car and he thought it was somewhere beyond the Maple Grove school house;" that at the time that information was given him, he (the witness) was standing on the righthand side of the car, next to Purcell.

At this point counsel for plaintiff moved the court to admonish the jury as to the effect of the testimony of the witness regarding the statement made by Ed Burnett, which motion the court sustained and admonished the jury that the testimony of Dash concerning Ed Burnett's statement was admitted only for the purpose of affecting the credibility of Ed Burnett as to the cause of the loss, if it did affect its credibility, and for no other reason.

Further Dash testified that he and his helper, Willis Gaskin, after talking with Burnett, went out the Maple Grove road, according to Burnett's directions, where they found the car in an old quarry, wrecked, at the foot of a cliff of a 45 degree incline; that the car had apparently, when driven over this cliff, turned over two or three times; that there were no keys found in the glove compartment nor was there any wire in the car with which it could have been started without the ignition key and that there was no evidence or sign of either of the car's two doors having been prized open, in order to apply a wire to the ignition switch.

Also J. W. Finnell, a further witness and the owner and operator of the Mt. Vernon Motor Co., and an experienced car man, stated that he had gone out where his wrecking crew had been sent and found plaintiff's car, there in the quarry, and there examined the wrecked car and that there were no keys found in the car; that the only way in which the car could have been started without turning the ignition back on was by putting a wire around the switch; that there was no such wire in the car and no signs or evidence on either of the doors, though they were badly bent, indicating that they had been prized open; that the only glass broken was on the right-hand door and it could have been broken when the car turned over when driven over the cliff. He stated as his conclusion or inference drawn from his examination of the car that *the one who drove the car over the cliff evidently had the keys to the car.*

We have given this extended summary of the circumstantial evidence given for the defendant as tending

to contradict Purcell's evidence, thus making an issue as to whether the car was in fact stolen, as testified by Purcell, or was, as contended by the company, not stolen but wrecked on this rough country road, when driven over the cliff, near Bond's home, some time during the night of August 3, by plaintiff's husband while drunk. Appellee contends that the jury's verdict, in effect so finding, is supported when considered in the light of the circumstantial evidence introduced by it, which tended to contradict and challenge the credibility of Purcell's direct testimony, given as a part of his very vague, confused and improbable story as to the fact of the claimed theft of the car and the attending circumstances.

At the conclusion of the introduction of all the evidence, each of the parties moved for a directed verdict, which motions were overruled, the court submitting, with instructions, the case to the jury upon all the evidence heard, when it found for defendant, or that the car was not stolen, even though defendant introduced no evidence expressly contradicting the positive testimony given by Purcell, that the car in question was stolen from the place he parked it on the night in evidence by some party unknown to him.

Such being the situation, the main and pivotal question here presented and urged for reversal in grounds 1 and 2 (both of which in effect go to the same matter) is: Was the direct testimony of plaintiff's husband, to the effect that the car had upon the occasion in evidence been stolen by some unknown party, sufficient, even though such allegation of the petition was directly denied by the defendant's answer, to entitle plaintiff to have given the directed verdict moved for? Appellant contends that by reason of its not having been categorically contradicted by any evidence given by defendant's witnesses, his positive testimony as to its theft must necessarily be accepted by the jury as true and therefore, there being no factual question before the jury, the court should have directed it to find a verdict in her favor.

Counsel for appellant argues that there being no evidence in this case presented by either of the parties to the effect that plaintiff's automobile was not stolen on the occasion in evidence and the direct testimony given by plaintiff's husband, that he parked the automobile on the Maple Grove road about eleven o'clock P. M. and

that when he returned to where he had parked it, some two or three hours later, he found it gone, being unimpeached and uncontradicted, it quite sufficiently met the burden resting upon plaintiff of establishing the basic fact alleged in her petition, that the car had been stolen, and that she was therefore entitled to a directed verdict.

The defendant, on the other hand, contends that the plaintiff having sought by her evidence introduced to convince the jury that her car was stolen and her evidence having failed, when considered by the jury in connection with the company's evidence, to prove to its satisfaction that the car was stolen, that not only did the pleadings make such an issue but also that the story told by the plaintiff's husband, being so vague, confused and improbable in its character, did in some degree carry its own refutation and challenge its credibility, with the result that the jury's verdict, finding for the defendant or that the car was not stolen, is sustained in the light of the defendant's evidence.

A very similar decision and question was presented in the case of Globe Indemnity Co. v. Daviess, 243 Ky. 356, 47 S. W. (2d) 990, 992, where the court said, with respect to the sufficiency of certain uncontradicted evidence there presented and which it was contended entitled plaintiff to a directed verdict:

> "There was no other evidence concerning the robbery, and the trial court regarded the plaintiff's evidence as conclusive, and hence that there was no question of fact to be submitted to the jury. The ruling would have been proper if the evidence was not disputed or the witness impeached and if but one legitimate inference could be drawn. Western Union Tel. Co. v. Smith, 164 Ky. 270, 175 S. W. 375; Wood-Heck v. Roll, 183 Ky. 128, 208 S. W. 768; Louisville & N. R. Co. v. Hunter, 185 Ky. 165, 214 S. W. 914. * * *

> "While no rigid rule can be laid down, it is universally accepted as a law of evidence that positive testimony may be contradicted by circumstances, or a witness may be so evasive, equivocal, confused, or otherwise uncertain as to make his credibility essentially a question for the jury."

In the case at bar, the plaintiff's husband, an interested witness, was the only witness in a position to

or who did directly and positively testify that the car in question was stolen from the place where parked by him at the road intersection; that he and an unnamed and unidentified party, who had there met him, had left it parked there, but that upon his return to this place where he had parked the car, he found it gone. However, this statement as to the loss of the car did not by any means constitute his whole story, detailing the circumstances and conditions under which he claims that the car was stolen and which circumstances were of such character as to carry some contradiction and suspicion as to the truth of Purcell's positive testimony, where giving a very vague, confused and improbable account of what were the facts, which could have been known only by him and perhaps the unnamed party who there met him at the car and left with him after (as he states) he had parked and locked it and put the keys in his pocket. Clearly this unnamed party was an available witness, whom he might have called to testify as to whether, as claimed by him, they together left the car parked and locked near the intersection of Maple Grove and Brush Creek roads, or on the other hand, as to whether he or they might not have driven away in it, rather than left it parked. Certainly such unnamed party's evidence, who participated with him that night in his unnamed transactions and later bewildered, drunken wanderings, extending over many roads, hills and hollows, would have properly been a part of the case, at least to the extent of stating whether or not they had in fact there left the car, parked and locked, as testified by Purcell.

In 20 Am. Jur. 188, section 183, as to this it is said:

"It is a well-established rule that where relevant evidence which would properly be part of a case is within the control of the party whose interest it would naturally be to produce it, and he fails to do so, without satisfactory explanation, the jury may draw an inference that such evidence would be unfavorable to him. This rule is uniformly applied by the courts and is an integral part of our jurisprudence."

Among the many cases there cited in support of the text is the case of Stocker v. Boston & M. R. R., 84 N. H. 377, 151 A. 457, 70 A. L. R. 1320, wherein the case is reported with extensive annotations, commencing page

1326. See further 10 R. C. L. 884 and 31 C. J. S., Evidence, p. 853, sec. 156, to the same effect.

See also the case of Kennedy v. McAllister, 31 App. Div. 453, 52 N. Y. S. 714, 718; 8 A. L. R. 826, where the principle that the testimony of an interested witness, though uncontradicted, is for the triers of facts, whether the court or the jury, who are not bound thereby, shall apply, is discussed, the court there saying in its opinion:

"The rule is general, if not universal, that where the witness is interested in the matter in controversy, and although his testimony is uncontradicted, his credibility is a question for the jury; and the court is not warranted in directing a verdict upon his testimony alone when the testimony may be improbable in itself, or inconsistent with other things or other circumstances of the case. * * *

"Facts testified to by a party, though uncontradicted, cannot be deemed established, as matter of law, if his testimony alone supports them, where there are other things or circumstances in the case which might render his testimony inconsistent or improbable, but must be submitted to the jury in order that it may determine what effect, if any, such other things and other circumstances and his interest in the result of the controversy should have upon his credibility, and upon the final disposition and result of the action."

The same principle was also discussed and applied in the case of Howard v. Louisville Ry. Co., 105 S. W. 932, 933, 32 Ky. Law Rep. 309, the court there saying:

" In trials by jury it does not follow that because one or more witnesses testify positively concerning a fact, and there is no evidence to the contrary, the verdict must be flagrantly against the evidence. The number of witnesses who testify to a fact is not necessarily a controlling feature in determining its truth; neither does the fact that their evidence may not be contradicted *by word of mouth compel its acceptance* as true. The jury have the right to disregard the whole or any part of the testimony of any witness, and it is their province to give such weight to the evidence as in their judgment and discretion it is entitled to. * * * There is no evidence whatever indicating passion or prejudice on the part

of the jury. Indeed, it is highly improbable that a jury should be biased in favor of the defendant in a suit against a corporation by a woman, or pre-disposed to return a verdict against her.'' (Italics ours.)

See, likewise to such effect, Saxton Coal Co. v. Kreutzer's Adm'x, 217 Ky. 670, 290 S. W. 475.

Applying the principle of the cited cases to the instant case, it is clear that the trial court did not err when overruling appellant's motion for a directed verdict.

The appellant also most earnestly contends that the jury's verdict rendered for the defendant, where it introduced no direct evidence showing that the car was not stolen, must, under the rule announced in the case of Nugent v. Nugent's Ex'r, 281 Ky. 263, 135 S. W. (2d) 877, be reversed.

However, as announced in the Globe Indemnity case, supra, the rule universally accepted as the law of evidence is that ''positive testimony may be contradicted by circumstances, or a witness may be so evasive, equivocal, confused, or otherwise uncertain as to make his credibility essentially a question for the jury.'' Such was clearly here the case and amply sustained the jury's refusal to accept as true such character of testimony given by Purcell, when testifying that plaintiff's car was stolen from him, where the evidence shows that Purcell was on this night drunk and did not definitely remember anything that happened or just where he left his car, but which was later found nearly two miles from where he stated he left it. Also clearly plaintiff's witnesses must have given the wrecking crew some information as to where Purcell wrecked his car, in the quarry, because it is shown that after plaintiff's witness talked with the garage employees about the lost car, they at once went directly out there and found it.

The jury, in finding for the company, was not passing judgment upon the credibility, quantum and probative character of the evidence offered on behalf of the defendant, but rather determined that the uncertain and unsatisfactory testimony of Purcell was not of such probative character or force as tended to establish the basic fact that plaintiff's car had in fact been stolen, upon which her right to recover on her policy depended.

The evidence introduced in her behalf having failed to convince the jury that the car had in fact been stolen, the plaintiff failed to maintain the burden imposed on her of making out her case, the rule being that a litigant who has a cause of action, which is denied by a pleading, must prove his case in accordance with established rules. Cumberland Bank & Trust Co. v. Buchanan, 291 Ky. 300, 164 S. W. (2d) 473. This the jury by its verdict found plaintiff had failed to do and therefore refused her recovery for the theft of her car.

We will not further extend this opinion by a discussion of other points argued for reversal in brief of counsel, deeming it here sufficient to say that we have carefully considered them and find that appellant's criticism of the ruling made therein is without merit.

Therefore, as the record shows that appellant, from any standpoint, has had a fair trial and that no error to her prejudice was committed, the judgment is affirmed.