# Chesapeake & Ohio Railway Co. v. Booth.

(Decided June 21, 1912.)

## Appeal from Fayette Circuit Court.

1. Railroads—Injury to Pedestrian—Question for Jury.—Where one in walking in a street containing railroad tracks was overtaken, struck and injured by a train approaching in his rear, as the evidence did not affirmatively show he saw or heard it in time to get out of its way; and there was a contrariety of evidence as to whether the engineer or fireman maintained a lookout, or gave any signal to warn him of its coming, the question whether his injuries were caused by the negligence of the engineer or firmen, or his own negligence, was properly left to the decision of the jury.

2. Railroads—Duty as to Operation in Cities or Towns.—In cities and towns where streets are occupied or crossed by railroad tracks, those in charge of the movement of trains thereon must operate them at moderate speed, give the customary signals of their approach, maintain a proper lookout and take such other precautions as circumstances and the exercise of ordinary care may require for the security of life.

3. Railroads—Suit Against Company and Engineer—Failure to Find Against Engineer.—In an action against a railroad company and its engineer for negligently injuring appellee, the failure of the jury to make any finding as to the engineer, did not invalidate a finding against the railroad company for the damages appellee sustained.

4. Joint Defendants—Verdict Against One Good, Though No Finding as to Other.—When two defendants jointly sued are severally liable, a verdict against one will be good, although there is no finding as to the other; nor does it necessarily follow that judgment should go in favor of the defendant as to whom there was no finding. But when the verdict as to him, interpreted in the light of the record, clearly implies an intention on the part of the jury to find in his favor, judgment, in that event, should be entered for him.

5. Railroads—Silence of Verdict as to Engineer Who is Sued Jointly.—It being apparent from the evidence that the liability of the railroad company was not dependent solely upon the negligence of the engineer, the silence of the verdict as to the latter, did not bar appellee's right to a judgment against the former upon the verdict as to it.

6. Master and Servant.—If the master's liability is not predicated solely upon the negligence of a particular agent, even a finding

that such agent was not negligent, is not inconsistent with the master's being liable by reason of his own, or another agent's negligence.

SHELBY & SHELBY for appellant.

ALLEN & DUNCAN for appellee.

OPINION OF THE COURT BY JUDGE SETTLE—Affirming on the original and cross appeal.

About 2:30 o'clock, a. m., on November 9, 1907, the appellee, Chas. F. Booth, was run down by a freight train of the appellant, Chesapeake & Ohio Ry. Co., while he was walking along Water street in the rear of the Palace Hotel, city of Lexington, and both of his feet mangled and cut off by the wheels of the engine, necessitating the amputation of both legs above the ankle joint. His left thigh was also badly broken causing an appreciable shortening of that limb.

This action was instituted by him against appellant, its engineer, A. S. Lewis, and brakeman, Eugene Young, to recover damages for these injuries, alleged to have been caused by their joint negligence. The answer of the appellant, engineer and brakeman, denied that appellee's injuries were caused by their negligence, or that of any of them, and averred contributory negligence on the part of appellee but, for which, the injuries would not have been received.

There were two trials of the case. On the first trial the verdict of the jury awarded the appellee $15,-000 damages. The judgment on this verdict was set aside and a new trial granted by the circuit court, because of error in the instructions. On the second trial the jury returned a verdict in appellee's favor against the appellant, Chesapeake & Ohio Ry. Co., for $12,500, but rendered no verdict as to the engineer, Arthur S. Lewis. During the first trial the circuit court gave a peremptory instruction as to Eugene Young, the brakeman, and by the judgment rendered appellee's petition as to him was dismissed.

Following the return of the verdict against the Chesapeake & Ohio Ry. Co., on the last trial, the circuit court on motion of the engineer, Arthur S. Lewis, treated the jury's verdict as a finding for him and entered judgment accordingly. After judgment was entered in appellee's favor against the Chesapeake &

Ohio Ry. Co., upon the verdict returned against the latter, it entered a motion and filed grounds for a new trial, but the motion was overruled and from that judgment it has appealed. Appellee has filed a cross appeal from the judgment dismissing his action as to Brakeman Young, and also from the judgment dismissing it as to the engineer, Lewis.

In order to give an understanding of the place of the accident, it will be necessary to state that it occurred on Water street in the rear of the Palace Hotel, at a point where the porch of a negro restaurant stands at a distance of from four to nine feet from one of the numerous railroad tracks located on Water street, which street runs east and west through Lexington and is largely given over to railroad uses, being, in fact, the highway through the whole length of which run the Chesapeake & Ohio Ry. tracks and those of the Louisville & Nashville Railroad, going to both Louisville and Cincinnati. As trains pass through this street in coming from the west they cross, amongst other streets, Broadway, Mill, Upper and Limestone, in the order named. The railroad track nearest the restaurant curves somewhat west of and in front of that building, so that the south rail is considerably closer to the eastern end of the building than at the western end thereof. Water street, from its intersection with Limestone to a point well beyond the restaurant, is fairly well lighted.

Just before receiving his injuries appellee left the Palace Hotel through a side door opening on Water street, and upon reaching that street, started, as he testified, to go to the Union Station for the purpose of getting information as to the time of trains running from Frankfort to Cincinnati. He had proceeded along Water street to a point at the east end of the restaurant porch, when he was struck and injured by some part of appellant's freight train known as second 98, which had come from Louisville and was passing east through Lexington. This train consisted of twenty-two cars; fifteen loaded and seven empty, besides the engine, tender and caboose. The regular arriving time of No. 98 at Lexington seems to have been about 12:50 a. m., but it was running in two sections that night, and the second section did not pass through Lexington until about 2:30 a. m. The engineer, Lewis, and a fireman named Stull were in the cab. The front brakeman, Young, was rid-

ing on the pilot of the engine watching the switches in order that he might, if necessary, jump off and change them without having the train stop. The conductor and rear brakeman were in the caboose at the rear of the train. It appears that appellant's servants on the train claimed not to have learned of the accident until the next morning, and the appellee himself was unable to give any clear account of how it occurred other than to say, that as he was walking along something struck him about the hip or middle of the body, knocking him down, following which he realized that the train was passing over his legs.

The engineer and fireman were both introduced as witnesses on the two trials of the case but the front brakeman, Young, though sued with the appellant and the engineer, did not testify on the last trial as he left the service of the appellant after the first trial, and it was claimed by the latter that his place or residence was unknown to it.

It was intimated in argument by appellant's counsel that appellee was intoxicated at the time of receiving his injuries and that the same were due to that fact, out while it appeared from the evidence that he had taken during the night drinks at several saloons, one at a negro bawdy house, and that he had a bottle of whiskey in his pocket when struck by the train, the evidence stopped short of showing him to have been drunk.

He testified that he did not see or hear the train when or before it struck him and that it gave no signal of its approach, either by the ringing of the engine bell or the blowing of its whistle; that when he stepped from the Palace Hotel into Water street he looked both ways to see if a train was approaching, and seeing none he then turned and walked west along the south rail of the track until he was struck.

Appellee also testified that his reason for selecting the way indicated, was because the ground was smoother and the walking better, than elsewhere on that part of Water street. His collision with the train occurred about 190 feet from where he entered Water street upon leaving the Palace Hotel, and at a point where the space between the first iron post in front of the restaurant and the curving track was only 4 feet 3 inches; and, as the cylinder of the engine was shown to project about 29 inches from its body, there was left a space of 1 foot 9 inches between the engine and the post of the porch.

In this narrow and manifestly dangerous place, appellee was caught by the passing engine. Water street, at and contiguous to the point of the accident, was, as appellant's trainmen knew, constantly used by pedestrains and vehicles and therefore, a place where the presence of persons might reasonably be expected at any time day or night. Warren and Braxton, two of appellee's witnesses, testified that they were at the time of the accident employed in the Navarre saloon, at the corner of Water and Limestone streets; the former being the night bartender and the latter the janitor or waiting man in the saloon; that the saloon was open and they were awake and heard the train by which appellee was injured, pass, and observed that it gave no signal either by ringing its bell or blowing its whistle. Warren's experience of four years as express messenger on railroads enabled him to speak with evident understanding of the operation of trains. It is clear that appellee was struck by the pilot beam or cylinder of the engine and his feet and legs thrown on the track, because his body was seen lying on the ground by engineer Lewis, from his cab window as it passed him; but Lewis thinking that Young had fallen from the pilot called to his fireman to know if Young was still on the pilot, and, being assured that he was, assumed he had been mistaken in thinking he saw a body on the ground and therefore pursued the inquiry no farther. It would seem that Young, from his position on the pilot, must have seen appellee as the pilot passed him, but as he did not testify, it cannot actually be known what knowledge he had on the subject.

It does not appear from the testimony of appellee, or any of his witnesses, that he, in the matter of receiving his injuries, was guilty of contributory negligence; nor was such contributory negligence shown by the evidence introduced in appellant's behalf. Negligence, either on the part of the person injured or the person or corporation inflicting the injury, will not be presumed, but must be directly proved, or facts shown from which it can properly be inferred. Early's Admr. v. L. H. & St. L. Ry. Co., 115 Ky., 13.

In view of this well known rule and the absence of any evidence of contributory negligence on the part of appellee, it is manifest that the circuit court did not, as claimed by appellant, err in refusing the peremptory instruction asked by it on the ground that appellee was guilty of contributory negligence.

When introduced as witnesses in appellant's behalf, Engineer Lewis and Fireman Stull testified that the former at the time of the accident occupied the engineer's seat next to the cab window on the right, the latter a seat near the window on the left side of the cab, and that the front brakeman, Young, was riding on the pilot of the engine for the purpose of throwing switches; however, on this occasion the switches were all set for the train and there was no occasion for slowing up the train that Young might leave the pilot to do any switching. They also testified that the train was moving from 4 to 6 miles per hour, and that neither the engineer or fireman, though both claimed to be keeping a lookout, saw appellee as the train was approaching him, or when it struck him. The engineer excused his failure to discover appellee's presence upon the ground, that as he got near him the curve in the track threw the smoke stack and front of the engine between him and appellee; but it is not apparent from the fireman's testimony why he was unable to see him. These witnesses admitted that there was no blowing of the whistle as the train approached the place of the accident, but both stated that the engine bell was ringing and had been from the time the train entered the corporate limits of the city of Lexington; and that owing to the absence of traffic in the streets of the city and the stillness of the night, the rattling of the cars attached to the train and the exhaust of steam from the engine, produced a great noise.

Let us now see whether appellant's second contention, that it was entitled to a peremptory instruction on the ground that no negligence on its part or that of its servants had been shown, should be sustained. We think appellant's counsel in urging this contention ignores three important things; first, that as it is admitted the engine whistle was not blown as it approached the place of the accident, and there was a contrariety of evidence as to whether there was any ringing of the engine bell, the jury should have been allowed to determine the issue as to whether appellee received any warning of the coming of the train; second, that as Water street at the place of the accident was constantly in use, both day and night, by pedestrians and vehicles, or free to such use, a proper lookout ahead was required of the engineer or fireman as the train approached the place of the accident; third, that as appellee was in plain view, of the engineer and fireman, certainly of the latter, from

the time of his leaving the Palace Hotel, and there was sufficient light, it was the province of the jury to say whether such a lookout would have disclosed to the engineer or fireman his presence and peril, in time for them to have prevented his injuries; and if, as they testified, the train's speed did not exceed four or five miles per hour, it would seem that it could have been stopped before it struck appellee. In expressing the view last above presented, we do not overlook the testimony of the engineer, to the effect that a curve in the track near the place of the accident, caused the engine to obstruct, for a short time his view thereof; but the photographs found in the record do not show that the curve in the track was so pronounced as to produce the effect claimed by the engineer. At any rate, the obstruction of the engineer's view by the engine was but fleeting; therefore, it is doubtful whether it had any appreciable effect in preventing him from seeing appellee.

If, however as insisted for appellant, the curve in the track and consequent interference of the boiler of the engine, so obstructed the engineer's vision as to altogether prevent him from discovering appellee's presence on the street, that fact, though it might exonerate the engineer of the charge of negligence, did not relieve the fireman of the duty, owing by him to the public and appellee of maintaining the necessary lookout ahead of the moving train. Indeed, if the circumstances were such as that the engineer could not maintain the lookout, it was the more incumbent on the fireman to perform that duty; and we do not find that the evidence furnishes any sufficient showing of his having performed it, or excuse for his failure to do so. In our view of the case, the facts were such as to allow the inference that appellee's injuries were caused by the negligence of appellant's engineer and fireman, or at any rate by the negligence of the latter, and the jury having by their verdict so found, appellant is chargeable with such negligence and responsible for the consequences thereof, as further found by them.

We have repeatedly held that in cities and towns where the population is dense, and a street is occupied by the tracks of a railroad company, the latter is bound to operate its trains, both day and night, at a moderate rate of speed, give the customary notice of their approach, maintain a proper lookout, and take such other precautions, as circumstances and the exercise of ordi-

nary care, may require for the security of life. L. & N. R. R. Co. v. McNary's Admr., 128 Ky., 408; I. C. R. R. Co. v. Murphy's Admr., 123 Ky., 787; I. C. R. R. Co. v. Flaherty, 139 Ky., 147; L. & N. R. R. Co. v. Potts, 92 Ky., 30; L & N. R. R. Co. v. Cummins' Admr., 111 Ky., 333; Raders Admr. v. L. & N. R. R. Co., 126 Ky., 722; L. & N. R. R. Co. v. Trissler 140 Ky., 447.

In I. C. R. R. Co. v. Flaherty, supra, it appears that the plaintiff when struck by the train was walking on the railroad track, where persons were licensed to go and accustomed to use it, and although he could easily have stepped off the track and out of the way of the train had he seen it or been warned of its coming, it was held that neither this fact nor his failure to look for the train, authorized a peremptory instruction for the railroad company, as there was evidence conducing to prove that no lookout was maintained by the engineer or fireman of the train, and that by a proper lookout they could have discovered his danger in time to have warned him thereof and prevent the train from striking him; in other words, it was held in that case that the question whether the plaintiff was guilty of contributory negligence was for the jury.

While appellee, by turning his head, would doubtless have seen the approaching train in time to have avoided his injuries, it cannot be said that his failure to do so was per se negligence; nor did such failure relieve appellant and those in charge of the train from the duty of exercising ordinary care to discover his presence, and like care to avoid injuring him. This duty should have been performed by maintaining a proper lookout from the engine and giving the customary signal of the approach of the train. If those in charge of the train failed to maintain a lookout or to give the necessary signals, such failure constituted negligence; and if by reason thereof appellee was injured by the train, he was clearly entitled to recover.

On the other hand, while appellee, in walking upon a street containing appellant's railroad track, had the right to rely upon its giving the customary signals of the movements of its trains on such street, it was his duty to use ordinary care for his own safety; and if he failed to use such care and such failure contributed to his injuries to such an extent, that but for same, he would not have been injured, no liability should have been fastened upon appellant because of such injuries.

In view of the evidence tending to show the failure of appellant's engineer and fireman to maintain a proper lookout, or give proper warning to appellee of the approach of the train, no reason is apparent for sustaining its contention that the verdict was flagrantly against the evidence. Whether, in view of the evidence introduced in appellant's behalf, it can be said the verdict was against the weight of the evidence, it is not our province to determine; our duty goes no farther than to decide that there was evidence to support the verdict; therefore, it must stand, unless it is apparent from the record that there was error in some ruling of the trial court that can be said to have prejudiced the substantial rights of the appellant.

Without discussing in detail the objections made by appellant's counsel to the instructions given by the trial court, we are constrained to say that they are in some respects, inaptly expressed; but the objectionable phraseology is, in our opinion, free from substantial error. While the word, "if" should have been substituted for "when" in defining the duty of the engineer in the third instruction, this error could not have misled the jury. The instructions properly defined the duties of those in charge of appellant's train and that of appellee, as well; and advised the jury what act or omission on the part of each would constitute negligence. They also properly defined negligence, ordinary care and the measure of damages, and, as a whole, fairly stated for the guidance of the jury the entire law applicable to the issues of fact submitted to them; and this being true, the rejection of the instructions offered by the appellant was not error.

It is strenuously urged by appellant's counsel as a ground for reversal, that the judgment against the appellant was not authorized by the verdict, although it found against it. The verdict reads as follows:

"We, the jury, find for the plaintiff against the defendant, Chesapeake & Ohio Railway Company, in the sum of Twelve Thousand and Five Hundred Dollars ($12,500.00.)"

This contention rests upon three propositions; first, that as the verdict of the jury was silent as to the engineer, Lewis, it was in effect a finding in his favor, therefore, the judgment entered for Lewis was proper; second, that appellant's liability depends upon the neg-

ligence of Lewis and unless he was negligent no liability could be imposed upon the appallant; third, that the failure of the jury to find against Lewis made the verdict against the appallant inconsistent and contradictory and barred appellee's right to recover against appellant.

If we were of the opinion that appellee's right of recovery depended alone upon the showing of negligence upon the part of the engineer, Lewis, an elaborate discussion of the propositions underlying this contention would be deemed necessary; but as there is, as we shall presently see, in other ground upon which to sustain the judgment, we think it sufficient to say that when defendants jointly sued are severally liable a verdict against one may be good, although there is no finding as to the other. Nor in such case would it necessarily follow that judgment should go in favor of the defendant as to whom there was no finding. But when the silence of the verdict as to him, interpreted in the light of the record, clearly implies an intention on the part of the jury to find in his favor, judgment, in that event, should be entered for him.

An illustration of our meaning may be found in the case of Pittsburg, C., C. & St. L. Ry. Co. v. Darlington, 129 Ky., 266, which was an action brought against the railroad company named and the Louisville & Nashville R. R. Co., by the administrator of Darlington, who was killed in a collision occurring between the trains of the two companies. The verdict returned by the jury as follows:

"We, the jury, find a verdict for the plaintiff to the amount of $10,000.00 and fix the blame on the Pennsylvania Railroad Company."

The Pennsylvania Railroad Co. was not sued in the action, but the Pittsburg, C., C. & St. L. Ry. Co., being a subsidiary corporation of the Pennsylvania Company, and both owned by a common owner, it was universally known as and called the Pennsylvania Railroad Company. Judgment was entered upon the verdict in favor of the plaintiff and against the Pittsburg, C., C. & St. L. Ry., Company for the amount of the verdict but no judgment was rendered for or against the Louisville & Nashville R. R. Company. It was urged on motion for a new trial and on appeal that the verdict as returned did not warrant the entry of any judgment; but in rejecting

that contention, we held that in construing the verdict, the intent of the jury was to be sought in the language used in the verdict, interpreted in the light of the record, and, for that purpose, resort might be had to the pleadings and other parts of the record; and though the evidence was not made a part of the record in the manner pointed out by Kentucky Statutes, 1903, section 4639, the court could consult its own recollection of the evidence as well as the files of the court, in order to understand what the jury meant by its verdict. Therefore, the judgment entered upon the verdict against the Pittsburg, C., C. & St. L. Ry. Company was affirmed.

Although the Louisville & Nashville Railroad Company did not complain of the failure of the trial court to enter a judgment in its favor, in response to the complaint of the Pittsburg, C., C. & St. L. Ry. Company that the verdict was incomplete, because it did not pass upon the question of the liability of the Louisvile & Nashville Railroad Company, we in the opinion said:

"But we think it did. The effect of the verdict, and the evident intent of the jury, was to find that the Louisville & Nashville Railroad Company was not negligent in the matter. It was equivalent to a verdict in its behalf, and the judgment should have been accordingly." Buckeye Engine Co. v. Buckwater, 22 R., 1706; Brannin & Smith v. Foree's Admr., 12 B. Monroe, 506; Miller v. Shackelford, 4 Dana, 264; Hanley v. Lawley, 90 Alabama, 527; Maynard v. Powder, 75 Ga., 664.

In the case of I. C. R. R. Co. v. Murphy, 123 Ky., 787, a reversal of the judgment against the railroad company was asked because the verdict was silent as to the engineer, who was jointly sued with it; it was insisted that the verdict was incomplete and that the judgment should not have been entered against the company, but this contention was rejected and the judgment, as entered, affirmed.

In the case of Probst v. Hensley, 133 Ky., 64, in which a similar verdict was returned by the jury, the same conclusion was reached by the court. It is manifest from the authorities, supra, that the silence of the verdict as to one defendant is not in law a finding in his favor, unless such appears to be the jury's intention. But if we accept the silence of the verdict in respect to the engineer, Lewis, as a finding that he was not negligent, that fact did not deprive appellee of the right of a judgment against appellant, upon the finding as to it. We may even concede

that the engineer's view of the place of the accident was so obstructed by the engine, before and at the time appellee was injured, that he did not see him, but it should not be overlooked that the fireman, Stull, was at the time on the engine, and, as it was as much his duty as that of the engineer to keep a lookout ahead of the train, and as it was not made to appear from the evidence that there was any obstruction in the way of his seeing the appellee as the train approached him, in time to have warned him of his danger or to have stopped the train in order to prevent his injuries, these facts furnished proof of his negligence and authorized the conclusion upon the part of the jury that such negligence caused appellee's injuries.

It is true Stull testified that he was maintaining a lookout and did not see appellee, but the jury were not bound by his statement, as the circumstances were such as to show that there was nothing to prevent his seeing appellee as the train approached him if a lookout had been maintained by him. There was no attempt made to show that the fireman's vision was in any way obstructed, as was the engineer's, or that he was engaged in any other necessary duty which prevented him from keeping a lookout at the time.

It was also as much his duty as it was that of the engineer to see to it that the bell was kept ringing or the whistle occasionally blown, as the train moved along Water street, for the purpose of warning persons who might be on the street, of the coming of the train; and there was evidence, as previously stated, tending to show that there was no ringing of the bell or other signal given, as the train approached and struck appellee, and if the bell was not ringing, it was as much his fault as that of the engineer.

So if there was a failure to ring the bell or maintain a lookout, it does no violence to the facts to infer that it was due to the negligence of the fireman, for which the appellant was and is responsible.

In view of these facts there is no ground for appellants' contention that the verdict was unsupported by the evidence. In reaching the above conclusion we have not taken into account appellee's contention as to the negligence of the brakeman, Young, as to whom there was a non-suit on the first trial upon the ground that he was not charged with the duty of maintaining a lookout from the train.

It being apparent from the evidence that the liability of the appellant was not dependent solely upon the negligence of the engineer, we cannot sustain appellant's final contention that the failure of the jury to find against the engineer, Lewis, made the verdict against the appellant inconsistent or contradictory, and barred appellee's right to recover against appellant. Obviously, if the master's liability is not predicated solely upon the negligence of a particular agent, a finding in favor of the agent is not inconsistent with the master's being liable by reason of his own, or another agent's negligence. Therefore, if it is made to appear that the particular agent was not negligent, and that the master or another agent was negligent, the principle contended for would have no application. We think the case of I. C. R. R. Co. v. Murphy, supra, conclusive of this question, in the opinion of which it is said:

"It is argued that the jury, through some prejudice against the corporation, refused to obey the court's instructions, and from this circumstance it is claimed that the verdict is unsupported by the evidence, because, if there was not enough evidence to justify the jury in their own opinion to find a verdict against the engineer, of necessity, there was also a lack of evidence to justify a verdict against his principal, who could be held responsible only upon his negligence. * * * It does not follow that the same verdict need have been rendered against the company and its engineer. We can think of cases where possibly the engineer ought to be held to the stricter account, and vice versa; but let that be as it may if the plaintiff is entitled to his verdict against two tort-feasors, but the jury are able to agree only as to one of them, and gives a verdict accordingly, we know of no law that prevents the plaintiff from having at least what the jury has given him. If he failed to get the verdict against another also liable, the plaintiff may be aggrieved but not the defendant. As to the effect of the action of the jury's failing to respond to the court's instructions as to the conductor's liability, perhaps the conductor is aggrieved, but that cannot avail the railroad company." Gulf, &c. Ry. Co. v. James, 73 Texas, 12; Bendenbaugh v. So. Ry. Co., 69 S. C., 1; C., N. O. & T. P. R. R. Co. v. Silvers, 126 S. W., 120.

The correctness of the ruling announced in the cases, supra, is recognized in some of the cases cited by appellant's counsel  For instance, in the case of Doremus v.

Root, 23 Wash., 710, principally relied upon by counsel in support of the claim that the judgment entered in favor of Lewis was inconsistent with the verdict against the appellant, it will be found that the opinion was predicated upon the finding, that the only negligence charged or proved against the company was that of the engineer Root, and in the opinion it is said:

"While there is a general allegation in the complaint that the appellant itself was negligent, the complaint as a whole negatives the idea that there was negligence on the part of the appellant, or any of its officers or employes other than the negligence of the defendant Root."

Obviously, the facts were unlike those in the instant case, because here negligence was shown on the part of the fireman, to say nothing of the brakeman, Young.

It being apparent from what was said in argument by appellee's counsel, that he does not ask a decision on the questions raised by his cross appeal from the judgment dismissing the action as to Young; or that from the judgment in behalf of Lewis, if the judgment in his favor againts the Chesapeake & Ohio Ry. Company is affirmed, we will not consider the cross appeals.

For the reasons indicated in the opinion the judgment is affirmed on the original and cross appeals.

Whole court sitting.