## Louisville & Nashville Railroad Company v. Quinn.

(Decided March 2, 1920.)

### Appeal from Rockcastle Circuit Court.

1. Trial—Taking Case From Jury—Improbability of Facts.—The credibility of a witness being for the jury, the courts are not authorized to reject his testimony and refuse to submit the case to the jury on the ground that the facts stated are highly improbable. It is only where the facts testified to are utterly at variance with well established and universally recognized physical laws, and therefore inherently impossible, that the courts may refuse to submit the case to the jury.

2. Carriers—Injury to Passenger—Duty of Engineer—Instructions.—It being no part of the duty of an engineer to discover whether an intending passenger had time to board the train or to determine for himself when the train should be started, and there being no evidence that the engineer saw plaintiff while he was attempting to board the train, it was error to give an instruction making the liability of the carrier depend upon the engineer's failure to give plaintiff a reasonable opportunity to board the train, or in starting the train with an unnecessary and unusual jerk or lurch, "after he knew, or could have known by the exercise of ordinary care, plaintiff's intention to become a passenger."

3. Carriers—Duty to Passenger—Negligence.—Where a passenger is at the station when the train stops and attempts to board the train at a place where it is usual and customary for passengers to board the carrier's trains, the conductor and brakeman, although they do not actually see him, are charged with knowledge of his presence, and the carrier is guilty of negligence if it starts the train before the passenger has a reasonable opportunity to board the train, or starts the train with a sudden, unusual and unnecessary jerk; but if a passenger attempts to board the train at a place where it is not usual and customary for passengers to board the carrier's trains, and neither the brakeman nor the conductor actually sees him, the carrier is not guilty of negligence in failing to give the passenger a reasonable opportunity to board the train or in starting the train with a sudden, unusual and unnecessary jerk.

B. D. WARFIELD, J. W. BROWN and C. C. WILLIAMS for appellant.

BEN CHAPEZE and L. W. BETHURUM for appellee.

Opinion of the Court by William Rogers Clay, Commissioner—Reversing.

In this action for personal injuries, plaintiff, John M. Quinn, recovered of defendant, Louisville & Nashville Railroad Company, a verdict and judgment for $3,000.00. The company appeals.

According to the evidence for plaintiff, he went to Glomar on July 3, 1917. Glomar is a flag station and no agency is maintained there. In addition to the main line there is a spur track there. After finishing his business plaintiff started down the spur track for the purpose of taking passage on the afternoon train to Hazard. As he approached, he flagged the engineer with a newspaper. The engineer saw him and motioned to him to come on. Just as the train stopped, plaintiff caught hold of the iron railings above the steps and placed one foot on the lower step. The train then started with a violent jerk, which threw plaintiff's foot from the steps. Though his hands slipped down on the railings, he managed to hold on and was dragged for about two hundred yards, during which time his feet were striking the ties. He then managed to put his knee on the step and crawled into the coach. He never told any of the employes of the company that he was injured. A soldier on the train asked him if he had been hurt. After reaching Hazard he went to his room, and experienced great suffering from his foot. After remaining there for a while, he went to Louisville, where his foot was operated on. Though Mrs. Angeline Stacy was impeached, she and C. H. Hawkins, who claimed to be present, corroborated plaintiff as to the circumstances of the injury. On the other hand, the engineer testified that he had no recollection of being flagged by plaintiff. He further stated that it was no part of his duty to see whether passengers had boarded the train, but that he started the train always on signals from the conductor. Neither the conductor nor the brakeman saw plaintiff, but they both say that the train stopped long enough for a number of passengers to board the train. They further say that the company maintained a platform composed of screenings and cinders on the left hand side of the track going towards Hazard, and that passengers always boarded the train from that side of the track. On the other hand, the evidence for plaintiff tends to show that passengers were accustomed to board the train from either side of the track.

It is first insisted that the court should have directed a verdict in favor of defendant because plaintiff's story of what happened was inherently incredible, and the rule announced in L. & N. R. Co. v. Chambers, 165 Ky. 703, 178 S. W. 1041, should have been applied. In this connection attention is called to the fact that plaintiff was unable to get on the train while it was moving slowly, and as his hands had slipped down on the railings, and the speed of the train had greatly increased by the time the train had gone two hundred yards, it was then a physical impossibility, as stated by the conductor and brakeman, for plaintiff to pull himself up so that he could get his knee on the step. The credibility of a witness being for the jury, the courts are not authorized to reject his testimony and refuse to submit the case to the jury on the ground that the facts stated are highly improbable. It is only where the facts testified to are utterly at variance with well established and universally recognized physical laws, and therefore inherently impossible, that courts may refuse to submit the case to the jury. Wasioto & B. M. R. Co. v. Hall, 167 Ky. 819, 181 S. W. 629; City of Louisville v. Dahl, 170 Ky. 281, 185 S. W. 1127. For aught that we know, plaintiff may have swung into a position where his feet touched the ground in such a way as to enable him, by the exercise of great strength, to place his knee on the steps. Therefore, we cannot say that it was a physical impossibility for him to have done this. The most that we can say is that it was highly improbable, and that being true, his credibility was a question for the jury.

In addition to instructions on the measure of damages and contributory negligence, the court gave the following instructions:

1. "The court instructs the jury that it was the duty of the defendant, the Louisville & Nashville Railroad Company, and its engineer, in charge of the train upon which the plaintiff, John M. Quinn, was seeking to become a passenger, at Glomar, Perry county, Kentucky, after the engineer was notified or knew, if he was notified or did know, that plaintiff was seeking to become a passenger, to observe and exercise the highest degree of care, in managing, controlling and operating said engine and train which a prudent person would exercise under like and similar circumstances, to protect himself, and if the jury believe, from the evidence, that said en-

gineer failed to exercise said care in the management or control and operation of said engine and train after he knew or could have known by the exercise of ordinary care plaintiff's intention to become a passenger, by failing to give the plaintiff a reasonable opportunity or time to board said train or in starting said train with an unnecessary and unusual jerk or lurch, before the plaintiff had a reasonable opportunity to board said train, and the plaintiff was injured thereby, then the law is for the plaintiff and the jury will so find. .

2. "The court instructs the jury that if they believe from the evidence that the train in question did not come to a stop, yet if they believe from the evidence that said train slowed down to such an extent as would reasonably warrant an ordinarily prudent person in assuming that he could board the train in reasonable safety to himself, by the exercise of ordinary care, and that the plaintiff attempted to board said train at the station at Glomar, at the place prepared for passengers to board said train, and while exercising ordinary care in such attempt, the engineer in charge of said train gave it an unusual and unnecessary jerk or lurch before the plaintiff had a reasonable opportunity, in the exercise of ordinary care, to have boarded said train, and the plaintiff was thereby injured, then the law is for him and the jury should so find.

5. "The court instructs the jury that if they believe from the evidence that the plaintiff, Quinn, attempted to get aboard the defendant's passsenger train at Glomar, on the side opposite to the platform, or place where passengers are usually taken on and off the train, and the agents and servants of the defendant company did not know of the plaintiff's peril and danger in time to have stopped the train and avoided injury to him, then they will find for the defendant.''

Instruction No. 1 makes the liability of defendant depend upon the engineer's failure to give plaintiff a reasonable opportunity to board the train, or in starting the train with an unnecessary and unusual jerk or lurch, "after he knew, or could have known, by the exercise of ordinary care, plaintiff's intention to become a passenger." It is clear from the evidence that it was no part of the engineer's duty to discover whether an intending passenger had time to board the train, and to determine for himself when the train should be started.

On the contrary, it was his duty to obey the signal of the conductor, and if he started the train in obedience to such signal, he was not guilty of negligence unless he saw that plaintiff was in the act of boarding the train, of which there is no evidence, and then failed to give plaintiff a reasonable opportunity to board the train, or started the train with a sudden, unusual and unnecessary jerk. That being true, we conclude that it was error to make the liability of the defendant turn on whether the engineer knew, or by the exercise of ordinary care could have known, of plaintiff's intention to become a passenger.

Since it is conceded that neither the conductor nor the brakeman saw plaintiff on the occasion in question, the liability of the company, in our opinion, turns on whether it was usual and customary for passengers to board trains from the side opposite the cinder platform, and whether plaintiff was there when the train stopped and attempted to board the train. If such was the case, the conductor and brakeman, although they did not actually see him, were charged with knowledge of his presence, and the company was guilty of negligence if it started the train before plaintiff had a reasonable opportunity to board it, or started the train with a sudden, unusual and unnecessary jerk. On the other hand, even if plaintiff was at the station when the train stopped for the purpose of taking passage thereon, but attempted to board the train from the side opposite the cinder platform, and it was not usual and customary for passengers to board trains from that side, then the conductor and brakeman were not charged with knowledge of his presence, and there being no evidence that they actually saw him, the company was not guilty of negligence in failing to give him a reasonable opportunity to board the train, or in starting the train with a sudden, unusual and unnecessary jerk.

To give effect to this view of the law, the court on another trial will give the following instructions in lieu of instructions 1, 2 and 5:

1. If you believe from the evidence that on the occasion in question plaintiff was at the station when the train stopped for the purpose of taking passage thereon, and attempted to board the train at a place where it was usual and customary for passengers to board defendant's trains, and the defendant failed to give plain-

tiff a reasonable opportunity to board the train, or started the train with a sudden, unusual and unnecessary jerk and plaintiff was thereby injured, you will find for plaintiff.

2. But if you believe from the evidence that plaintiff was not at the station when the train stopped, for the purpose of taking passage thereon, or attempted to board the train at a place where it was not usual and customary for passengers to board defendant's trains, or that he was given a reasonable opportunity to board the train and the train was not started with a sudden, unusual and unnecessary jerk, then in either of these events you will find for the defendant.

Judgment reversed and cause remanded for a new trial consistent with this opinion.