## Kroger Grocery & Baking Company v. Flora.

(Decided December 19, 1930.)

WM. J. DEUPREE and NICHOLS, MORRILL, WOOD, MARX & GINTER for appellant.

ORIE S. WARE and ELMER P. WARE for appellee.

OPINION OF THE COURT BY JUDGE LOGAN—Affirming.

The petition which was filed by the appellee, Flora, in the circuit court alleged that the representative of appellant and detectives in his employ, together with others whose names were to the appellee unknown, while investigating certain alleged offenses that had been committed by breaking into the stores of appellant, induced him to go with them to St. Bernard in Hamilton County, Ohio, to face a man named Connors who had made a confession implicating appellee in the robberies; he alleged that after he reached St. Bernard he was detained in a certain building from about the hour 8 o'clock p. m., until 5 o'clock a. m., and that during the time that he was so detained the appellant and its agents, detectives, and employees, while acting within the scope of their authority in the investigation of the alleged offenses mentioned and acting in conjunction and co-operation with other persons whose names were also unknown to appellee, did unlawfully, willfully, and wrongfully abuse, curse, and threaten appellee, and that then and there they unlawfully, willfully, wrongfully, cruelly, and brutally assaulted him, striking, beating, and injuring him on the head, face, and body with their hands, fists, and feet in an effort to elicit from him a confession that he had taken part in the robberies when he was not guilty, and that by their conduct they greatly humiliated and mortified him, and that he was caused to suffer great mental and physical pain and anguish.

The allegations in the petition while not aptly made for the purpose, sufficiently charge a conspiracy on the part of the representative of appellant and the detectives employed by him, acting in conjunction and in concert with others unknown to appellee; the conspiracy being in furtherance of obtaining a confession from appellee that he had taken part in certain robberies mentioned above.

There was a denial of the allegations in the petition made by the answer, and, upon a trial, the jury returned a verdict in favor of appellee for $1,500.

This appeal is prosecuted to reverse that judgment, and the only ground relied on is that the evidence does not show that appellant was responsible for any assault that was made upon appellee at the time alleged in the petition.

Briefly stated, the evidence offered by appellee is to the effect that a representative of appellant with detectives came to the store where he worked for appellant in Covington about closing time and advised him that the man Conners had made a confession implicating him in the robberies. He vigorously denied it, and, in the course of the talk in the store, he was abused by the detectives who called him a thief and a crook. This abuse was carried on for some time until it was at last suggested that appellee face Conners in the matter of the confession. Appellee, without knowing where Connors was, readily consented to accompany the detectives and the representative of appellant and they took him to St. Bernard, and at the police station in that town Connors was brought before him. Connors told him what he had said in the confession was true, and that appellee was implicated in the robberies. Appellee continued his vigorous denial of the charge. The detectives, according to the evidence of appellee, were vociferous, insulting, and abusive in their efforts to obtain a confession from him, but he adhered to his denial. When he had been there for some time two detectives of the city of Cincinnati came in and either requested the privilege of talking to appellee or else he was turned over to them without a request. He was turned over to them, and they took him into a separate room where appellee testified that they pursued the same abusive conduct in an effort to obtain a confession from him that he had been a party to the robberies which had been committed. It was while he was in the separate room with the Cincinnati detectives that he was assaulted. He testified that he was struck in the face and kicked. Failing to obtain a confession the Cincinnati detectives returned him to the detectives that had been with him since he left the store in Covington. The appellee remained at the police station in St. Bernard until 5 o'clock the next morning. Some of the detectives talked to him further in an effort to obtain a confession. Others who had been implicated by the confession of Connors were sent for and brought in. One of the attorneys for appellant, a prominent attorney residing in Cincinnati, was called from his home between 1 o'clock

and 2 o'clock a. m. and he appeared upon the scene for some purpose not clearly disclosed. He had a talk with appellee.

It is true that about 11 o'clock p. m. some one told appellee that he need not remain longer in St. Bernard, and that he was free to leave, but he responded that he would stay and see the matter through.

The representative of appellant and the detectives that he took with him to Covington testified that the examination and conversation with appellee in Covington and with them while in St. Bernard were not such as would give rise to a complaint. They admit the taking of appellee to St. Bernard and having him confronted with Connors; they also admit interrogating him there at some length. They admit that the Cincinnati detectives came into the room where they and the appellee were and asked permission to talk to appellee which they granted. At this particular time the representative of appellant was not immediately present. They admit that the appellee remained in St. Bernard until about 5 oclock in the morning. They deny, with emphasis, that they had anything whatever to do with the Cincinnati detectives, or any connection with them, or that they acted in co-operation or concert, with them in their examination and contract with appellee. They each testify that the Cincinnati detectives were not invited, communicated with, or sent for, and that the acts and conduct of the Cincinnati detectives were wholly a thing separate and apart from the acts and conduct of the representative of appellant and the detectives which he had employed.

It is the contention of counsel for appellant that the mere presence of a person at the time and place of an assault without any act, word, or gesture in aid or encouragement of the act, and without anything to show that the assault was advised by him, or that he aided or encouraged the person to make the assult, will not render such person liable in damages as a conspirator. It was substantially so held in the case of Ryan v. Quinn, 71 S. W. 872, 24 Ky. Law Rep. 1513.

The rule is stated in 2 R. C. L. 5, to the effect that, where several persons are engaged in making an arrest, and there is an assault by one of their number without connivance or concurrence of the other, such an assault does not make them all liable for the action of one.

In 5 C. J. 627, the rule is stated to be that there must be some overt act on the part of one not actually committing the offense that shows his approval or connivance or procuring of the assault.

There is no dispute about the correct principles of law governing in this case. If there was no evidence that the separate divisions of the investigators acted in conjunction, or in concert, with each other, and if no facts were proven that would lead reasonable men to infer that the Cincinnati detectives acted in concert with the other division, no case would have been made out for the jury. But facts were proven from which a jury may have inferred that the Cincinnati detectives acted in concert with the representative of appellant and the detectives employed by him. A jury does not have to accept as the absolute truth that which has been testified to by a witness if there are circumstances from which a reasonable inference may be drawn, appearing in the evidence, which contradicts the witness. The Cincinnati detectives appeared on the scene immediately after the appellee had been subjected to a most gruelling examination, and, according to his statements, a most outrageous examination. He was turned over to the Cincinnati detectives by the detectives acting for appellant, and the Cincinnati detectives took him to one side and subjected him to the same character of examination. The divisions which may have been operating together sought the same thing, that is, a confession from appellee. It is true the Cincinnati detectives testified that they had learned of the confession of Connors, and, as it related to robberies in Cincinnati, they went to St. Bernard to have a talk with Connors about the robberies. They learned from the confession that appellee had taken part in the robberies. The jury may have inferred why the Cincinnati detectives could walk a straight course to appellee where the other detectives had him. They knew appellee was there apparently, or at least this may have been inferred. It is clear from the evidence that appellee was kept in St. Bernard for some purpose after the meeting between him and Connors. He went there only to face Connors, but after he had done that he was retained and examined extensively by those who had taken him. The Cincinnati detectives were equally positive in their statements that they had not been invited

by the other division of detectives to take a part in the examination of appellee.

Appellant argues that this case is no stronger than the case of Kroger Grocery & Baking Co. v. Plaggenburg, 199 Ky. 551, 251 S. W. 650. That case was one where appellant's representatives accused Ethel Plaggenburg of stealing from one of the stores of appellant where she was cashier. The evidence in that case disclosed that she was taken to the Cincinnati office of appellant where she was interrogated, and thereafter she was taken to the office of the attorney of appellant, probably the same attorney that appeared after midnight at St. Bernard when the interrogation of appellee was going on. Plaggenburg sued for false arrest, and appellant proved overwhelmingly that she went willingly and was not under restraint at any time, and this court held that the verdict was flagrantly against the weight of the evidence. The basis of the opinion in that case was the opinion in the case of Kroger Grocery & Baking Co. v. Hamlin, 193 Ky. 116, 235 S. W. 4. That case was one for alleged malicious prosecution. In that case a warrant had been taken out against Miss Hamlin charging her with converting to her own use goods from one of the stores of defendant. She was tried in police court and discharged. The facts in that case show that some of the employees of the appellant appeared in the store where Miss Hamlin worked at closing time when she was getting ready to lock up and saw her leaving with a sack, or bundle, of goods which afterwards proved to be some eggs and canned milk. They took her back into the store where they induced her to sign a confession that she had disobeyed the rules of the store. She did not claim that she was coerced, or threatened. In that case they inquired of her if she would be willing to go to the office of the company in Cincinnati which she consented to do, and they took her in an automobile where the superintendent and other agents assembled. The evidence in that case was conflicting as to what took place after they induced her to come into the office. She testified that they accused her of stealing and threatened to send her to the penitentiary or put her in jail and kept her up all night trying to induce her to sign a paper acknowledging that she had stolen property from the company. Finally they did induce her to sign a paper confessing that she had taken goods of the amount of $8, and she implicated Ethel Plaggenburg, the cashier referred to

in the other case cited, charging that she had taken goods to the extent of $3. She was given car fare and sent home. The agents and employees of the company testified that nothing happened in the manner stated by Miss Hamlin. It was held in that case that the verdict was flagrantly against the evidence.

The evidence in neither of those cases was as strong as it is in this. In those cases there was a flat contradiction of all the evidence, and there were no circumstances from which it might be inferred by the jury that the facts as detailed by the plaintiff were more nearly in accordance with the actual facts than those detailed by the employees of defendant. We think it is different here. The evidence preponderates in favor of the appellant, but it cannot be said that it is so flagrantly against the weight of the evidence as to strike the court at first blush that the judgment should be reversed on that ground.

Judgment affirmed.

Whole court sitting.