## Globe Indemnity Company v. Daviess.

(Decided March 22, 1932.)

(As Modified April 26, 1932.)

358

FURLONG & WOODBURY for appellant.

CHARLES W. MORRIS for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—
Reversing.

The appeal is from a judgment on a directed verdict in favor of the appellee, Mrs. Inez Daviess, for $1,000 in her suit to recover that sum on a policy of insurance indemnifying her against robbery of jewelry and other chattels. The defendant denied that the plaintiff had been robbed, and also sought to avoid liability because of certain false representations, to be presently considered.

1. Mrs. Daviess testified that upon opening her front door in answer to the bell on August 8, 1929, a man with a handkerchief over his face "stuck a gun in my side and told me to hand him over the jewelry I had on, which I did." She immediately notified the police and the insurance company. One morning five months later all of her jewelry so taken from her, except a diamond ring, valued at $1,200, was found by herself in a plain envelope in her mail box. The articles returned were "a diamond bracelet, sapphires and diamonds, and another solitaire with small diamonds around it and onyx." She could give no description of the robber except that he was a medium sized man wearing a cap. The plaintiff lived on one of the principal thoroughfares of the city of Louisville, and, while the hour at which she claims to have been robbed at her front door is not definitely stated, it appears that it was in the afternoon.

There was no other evidence concerning the robbery, and the trial court regarded the plaintiff's evidence as conclusive, and hence that there was no question of fact to be submitted to the jury. The ruling would have been proper if the evidence was not disputed or the witness impeached and if but one legitimate inference could be drawn. Western Union Tel. Co. v. Smith, 164 Ky. 270, 175 S. W. 375; Wood-Hick v. Roll, 183 Ky. 128, 208 S. W. 768; Louisville & N. R. Co. v. Hunter, 185 Ky. 165, 214 S. W. 914. However, this court is among those which are said to uphold with jealousy the right of trial by jury by

the adoption of the doctrine of the scintilla rule to the effect that, where there is any evidence, however slight, tending to support a material issue, the case must go to the jury as the exclusive judges of the weight of the evidence, although the judge may be of the opinion that the weight of the evidence is insufficient to support the issue. Accordingly, it has been often written that, although the testimony may be highly improbable, the court should submit the case to the jury. City of Louisville v. Dahl, 170 Ky. 281, 185 S. W. 1127; Louisville & N. R. Co. v. Quinn, 187 Ky. 607, 219 S. W. 789. It is another familiar rule that a motion for a directed verdict admits the truth of the evidence and all reasonable inferences and deductions which can be drawn from it as well. So the judge may not invade the province of the jury where the evidence is in anywise contradictory or disputed, or if there is room for reasonable men to differ as to the fair inferences springing from the recitation of facts, purported or real, or if logical deductions may be drawn from it. It is a trite expression that the credibility of a witness is for the jury to consider. Louisville & N. R. Co. v. Spears' Admr., 192 Ky. 64, 232 S. W. 60; Louisville & N. R. Co. v. Jolly's Admr., 232 Ky. 702, 23 S. W. (2d) 564, and cases cited therein.

Probative evidence is testimony carrying the quality of proof and having fitness to induce conviction of truth. It consists of fact and reason co-operating as co-ordinate factors. Jones on Evidence, sec. 9. Does reason co-operate with the verbal testimony in the case at bar? Does not the story itself carry in a degree some refutation and challenge the credibility of the witness? The unusual character of the evidence rather shocks one's sense of the probabilities and tests his credulity. The alleged robbery was of such a character as to defy contradiction and all but prevent the defendant from producing any evidence in support of its denial.

While no rigid rule can be laid down, it is universally accepted as a law of evidence that positive testimony may be contradicted by circumstances, or a witness may be so evasive, equivocal, confused, or otherwise uncertain as to make his credibility essentially a question for the jury. Chesapeake & O. Ry. Co. v. Booth, 149 Ky. 245, 148 S. W. 61; Beatty v. Beatty, 151 Ky. 547, 152 S. W. 540; Ky Trac. & Term. Co. v. Jenkins, 171 Ky. 539, 188 S. W. 645; Webb v. Elkhorn Mining Corp., 198 Ky. 270,

248 S. W. 844; Louisville & N. R. Co. v. Slusher's Admr., 217 Ky. 738, 290 S. W. 677; Martyn v. Jacoby's Admr., 223 Ky. 674, 4 S. W. (2d) 684; Commonwealth Life Ins. Co. v. Pendleton, 231 Ky. 591, 21 S. W. (2d) 985, 66 A. L. R. 1526; Kroger Grocery & Baking Co. v. Flora, 237 Ky. 191, 35 S. W. (2d) 275. Full annotations on the subject of disregarding uncontradicted testimony in civil actions may be found in Kelly v. Jones, 290 Ill. 375, 125 N. E. 334, 8 A. L. R. 792. Perhaps the strongest exemplification of the doctrine is the rule to the effect that evidence inherently impossible and at variance with the recognized physical laws, or contravening the laws of nature, is not sufficient to take a case to the jury. Louisville & N. R. Co. v. Chambers, 165 Ky. 703, 178 S. W. 1041; Caledonia Ins. Co. v. Naifeh, 229 Ky. 293, 16 S. W. (2d) 1046. We would not be understood as placing the evidence of the plaintiff in that class, but are simply pointing out that a jury, or a fortiori a trial judge, is not bound to accept the literal statements of a witness as true if they contain improbabilities or if there are reasonable grounds for concluding that they are false.

The reason for the rule would seem to be that, as the credit due to a witness for veracity is founded in the first instance on the general and common experience of mankind, it follows that, if he gives testimony concerning a matter which is so at variance with that experience as to be classed as impossible, improbable, or seemingly fictitious, the presumption of absolute verity ceases or is destroyed. Such is the purpose and effect, for example, of impeachment of a witness by proving a bad reputation for veracity or immorality or conviction of a felony; or the rejection of a convicted perjurer. Out of this experience has arisen the maxim, "Falsus in uno, falsus in omnibus." Jones on Evidence, sec. 2471.

We have a forceful application of the rule under consideration in Louisville & N. R. Co. v. Philpot's Admr., 215 Ky. 682, 286 S. W. 1078, 1079, where the sole eyewitness to the death of a pedestrian struck by a train testified positively that he had seen the approaching train and with knowledge thereof had deliberately gone upon the track in front of it, practically committing suicide. There was not a scintilla of testimony contradicting the witness on this most important point, but as to many other circumstances and material matters he was contradicted. It was held that a peremptory instruction

based upon the contributory negligence of the deceased was properly refused, because it could not be said that the evidence thereof was conclusive or that the witness was not impeached.

The rule was applied in a case of this character in Kansas City Regal Auto Co. v. Old Colony Insurance Co., 187 Mo. App. 514, 174 S. W. 153, where a claim was made under an insurance policy for the theft or an automobile. The trial court on uncontradicted testimony directed a verdict for the plaintiff. The appellate court court was of opinion that the evidence, though not met by opposing evidence offered by the defendant, was such as entitled the jury to infer otherwise, and did not unequivocally and undisputably establish the ultimate facts, but afforded reasonable ground for the conclusion as one of fact that the claimant had failed to sustain the burden of proof. It was held that the issue should have been submitted to the jury.

We are of the opinion that the nature of the facts of this robbery and attendant circumstances—no witness save the vitally interested plaintiff; the meager description of the robber; the act committed in broad daylight at the front door, on a prominent street in a large city; no clue as to the culprit; the mysterious return of all jewelry taken save one article of the approximate value of the insurance, and that returned in a rather fantastic method; and, we may add, the peculiar circumstances under which the policy was obtained—all raise such doubt that a reasonable inference may be drawn that the robbery did not occur. The evidence was of that character that put to test the credibility of the story, and the jury should have been permitted to determine the issue.

2. Since there may be another trial of the case, we should consider other defenses interposed, concerning which the principal arguments have been made before us.

The issuance of the policy was under unusual circumstances. One night in April, preceding the alleged robbery, a friend of the insured, from her home and in her hearing, called Robinson, a well-known insurance agent, and inquired whether he sold this kind of insurance. Upon being advised affirmatively he asked him to have issued the policy in suit and gave the name and address of the appellant. In a day or two Robinson had the policy prepared in his office. Without any information concerning the subject-matter, there was written

in the policy answers to certain questions contained in what appears to be intended as a copy of the application. Robinson testified that he wrote a letter to Mrs. Daviess transmitting the policy and the bill for the premium, in which letter he called her attention to the questions and answers and requested that she return the policy for correction if the answers were incorrect. In a few days a remittance for the premium was duly received, but no reply to the letter. Mrs. Davies testified she received the policy and a bill, but did not get the letter. She put the policy away without reading it and sent a check for the premium.

The evidence of the contents of the letter was not competent, as was ruled by the trial court. Robinson testified that he remembered signing the letter and policy, and that they and the bill for the premium were attached, and recalled that they were accompanied by the addressed envelope. In the usual course of business, after being signed, the letter and inclosures were removed from his desk and posted by some of the stenographers or clerks in the office. Since it was not shown that the letter was stamped and posted, the evidence was insufficient to raise the presumption of delivery to the addressee. Home Insurance Co. v. Roll, 187 Ky. 31, 218 S. W. 471; Eastham v. Stumbo, 212 Ky. 685, 279 S. W. 1109; Gus Dattilo Fruit Co. v. Louisville & N. R. Co., 238 Ky. 322, 37 S. W. (2d) 856; Brown v. Union Central Life Ins. Co., 241 Ky. 514, 44 S. W. (2d) 514.

3. The policy recites that one of the considerations for the contract of insurance was:

"The statements contained in the schedule hereinafter set forth, which statements the assured, by the acceptance of this policy makes and warrants to be true."

Statements in this schedule numbered 10 and 11 are the only ones involved and are as follows:

"10. The assured has not sustained any loss or damage nor received nor claimed indemnity for any loss or damage by burglary, theft or robbery in the premises covered hereby or elsewhere within the last five years, except as herein stated. 'No exceptions.'
"11. No burglary, theft, or robbery insurance applied for or carried by the assured in the premises

covered hereby or elsewhere has ever been declined or cancelled by any company within the last five years as herein stated. No exceptions."

The company pleaded that the statements were false, fraudulent, and material to the risk, and that the policy would not have been issued had the truth of the matter been stated. Without the hearing of the jury, evidence was placed in the record as avowals that, within three years before the policy was issued, the plaintiff had collected $675 from another company on account of the theft of some jewelry and a few articles of clothing, and that the company had canceled the policy. The legal point presented here is whether the insured is bound by the statements in the policy, and whether they are available as a defense, their falsity and other essential elements being established. We may first note that the designation in the policy of such statements as warranties does not make them so, for it is in conflict with section .639 of the Kentucky Statutes, which declares that they are to be regarded only as representations, and that they shall not prevent a recovery under the policy unless material or fraudulent. This statute converts statements designated as warranties, with specified effect of a breach, into representations with the resultant effect of falsity. Security Life Ins. Co. of America v. Black's Admr., 190 Ky. 23, 226 S. W. 355. The representations if false and fraudulently made will defeat a recovery under the policy regardless of their materiality; and, if innocently made, but false and material to the risk, they have the same effect. Security Life Ins. Co. of America v. Black's Admr., supra; National Life & Acc. Ins. Co. v. Fisher, 211 Ky. 12, 276 S. W. 981; Penick v. Metropolitan Life Ins. Co., 220 Ky. 626, 295 S. W. 900.

In Teich v. Globe Indemnity Co. (Mo. App.), 25 S. W. (2d) 554, an identical policy was in suit. It had been issued under circumstances somewhat similar to those related here, and the very questions involved here were involved there. The insured had accepted the policy without informing himself of its contents. The Missouri court held him bound by its terms and the warranties therein on the ground that the tender of the policy was a proposed contract and when accepted it became a contract binding and obligatory according to its provisions and not otherwise. The insured accepted, retained, and reaffirmed those terms as the agreement under which he

claimed indemnity, and, having adopted the policy as the foundation of his action, could not impeach its integrity. It further held that the acceptance of the policy by its expressed terms constituted a warranty that the statements in the schedule were true, even though the insured never read the policy or signed an application for it, and that, being untrue, the contract was avoided at the option of the company. That case, however, may be distinguished from this one, first, because there was some evidence of a statement by the insured upon which the answers were prepared, and because it does not appear that the Missouri statute transformed the statements from warranties into representations. 4 Couch, Encyl. of Ins., sec. 820t. In Liberman v. American Bonding & casualty Co. (Mo. App.), 244 S. W. 102, it is said the Missouri misrepresentation statute (Section 6142, Rev. St. 1919) has no application to contracts of insurance of this kind.

Some distinctions may here be noted between representations and conditions or covenants of a contract. A representation precedes the contract of insurance, is an inducement for its making, and incidental thereto. It relates facts upon which the insurer determines whether it will accept the risk—not continue it. The insured is not bound by the exact letter of the statement, for it need not be literally true. The policy is not voided, if matter, though relevant to the transaction, is not material to the risk. It is material when it communicates any fact important to the matter of the risk that may be reasonably supposed to influence the judgment of the insurance company in undertaking the risk, or in calculating the premium. A warranty is a part of the contract itself upon the literal truth or fulfillment of which the validity of the entire contract depends. The falsity or breach of a warranty releases the insurance company from liability, even though the insured was innocent of its presence in the policy the same as would a mutual undertaking in any other kind of contract. The question of materiality of the statements does not arise in the case of warranty. 3 Bouv. Law Dict., page 2899; May on Insurance, sec. 156; 4 Cyclopedia of Ins. Law, Couch, sec. 818; Petit v. German Ins. Co. (C. C.), 98 F. 800, 802; Hartford Fire Ins. Co. v. McClain (Ky.), 85 S. W. 699; U. S. Casualty Co. v. Campbell, 148 Ky. 554, 146 S. W. 1121; Ætna Life Ins. Co. v. McCullagh, 185 Ky. 665, 215 S. W. 821.

Our statute controlling representations does not apply to executory stipulations or promissory warranties contained within the policy as conditions subsequent, such, for example, that the insured will not increase the fire hazard by mortgaging the property after the policy was issued (Niagara Fire Insurance Co. v. Mullins, 218 Ky. 473, 291 S. W. 760), or the more prominent one of continuing to pay the premium. Those things to be omitted or performed in the future are to be distinguished from those things which induced the execution of the contract.

We have gone to some length to show that the Teich and the Mullins cases (to the extent noted) which are relied upon so confidently by the appellant are not controlling.

We do not conceive that there can be any retroactive representations, but there may be contained in the contract itself stipulations which, though not signed by the insured, as stated in Hartford Fire Ins. Co. v. McClain, 85 S. W. 699, 701, 27 Ky. Law Rep. 461, "amount to representations by him of facts, if not assurances on his part, and are of the subject-matter, and within the very mischief sought to be remedied, by the statute quoted"— section 639, relating to the effect of so-called warranties or representations and their effect. See, also, Niagara Fire Ins. Co. v. Mullins, supra. Hence, stipulations of that character must be given the same effect as if stated in an application, and the terms of the statute applied to them. Of such are those in the policy presented in this case. Therefore, if the statements to the effect that the insured had not sustained a loss nor received or claimed indemnity for loss by burglary, theft, or robbery within the previous five years, or that a similar policy had not been canceled within that period, were false and the insured knew that fact and knew that they were contained in the policy schedule, her failure to disclose the truth of the matter constituted a fraud upon the insurer and she cannot recover. Furthermore, if she knew the schedule contained those statements but was ignorant of their falsity and therefore was relieved of the duty to disclose the truth, yet she cannot recover under the policy if in fact they were false and were material to the risk, that is, if the truth had been known to the company, and acting in accordance with the general usage and cus-

tom of insurance companies engaged in this line of business, it would have refused to issue the policy.

4. The court sustained exceptions to those parts of the deposition of the superintendent of defendant's burglary department in which he testified that, had his company been correctly informed as to the previous loss and collection of insurance of this character by the plaintiff and of the cancellation of the risk by another company, his company would have made an investigation and would have been guided by the facts disclosed in the acceptance or rejection of the risk. The action of the lower court was proper, not only because he did not state what his company would have done under the particular facts which might have been disclosed by an investigation, but also for the stronger reason that the question is not what the particular company alone would have done, but whether, acting reasonably in accordance with the usual custom, practice, or usage of insurance companies writing this kind of business, it would have issued the policy had the truth been disclosed by the applicant and the facts had been revealed by a subsequent investigation. The facts are the important thing and not the practice of investigating. King v. Ohio Valley Fire & Marine Ins. Co., 212 Ky. 770, 280 S. W. 127; Hartford Fire Insurance Co. v. Golden, 188 Ky. 742, 224 S. W. 177.

The judgment is reversed, and the case remanded for consistent proceedings.

Whole court sitting.